# Grimes *v.* The State.

*Indictment for Arson.*

1. *Discredited witness; weight of testimony of.*—There is no maxim of the law of evidence which requires greater caution in its application, than that which affirms that a witness, intentionally giving false testimony as to any material fact, is to be wholly discredited by the jury; and this court "follows the authorities which hold that it is not a rule of law, affecting the competency, operating a disqualification of the witness, to be given in charge to the jury as imperatively binding them, but is to be applied by them, according to their sound judgment, for the ascertainment, and not for the exclusion of truth."

2. *Arson; constituents of offense.*—Setting fire to a store-house, with the intent that the fire should be communicated to, and should burn, a dwelling-house situated near by, is, in law, deemed the burning of the latter.

FROM the Circuit Court of Russell.

[Grimes v. The State.]

Tried before the Hon. JAMES E. COBB.

G. D. & GEO. W. HOOPER, for the defendant, cited Starkie on Evidence, 873.

H. C. TOMPKINS, Attorney-General, for the State, cited 2 Wharton's Amer. Crim. Law, §§ 1658, 1669; *Corley v. The State*, 28 Ala. 22; *Addison v. The State*, 48 Ala. 478.

BRICKELL, C. J.—The defendant was indicted, in the form prescribed, for arson in the second degree, under the clause of section 4347 of the Code of 1876 which declares, that " any person who willfully sets fire to, or burns, any inhabited dwelling-house, or any steamboat, or vessel, in which there is at the time no human being, is guilty of arson in the second degree." The bill of exceptions, without purporting to set out all the evidence, informs us there was evidence showing that two houses were burned; the one, a house used for storing corn and fodder, to which fire was set, situated some ten or twelve steps apart from the inhabited dwelling-house, which was burned in consequence of taking fire from the store-house. Two witnesses proved threats to burn the houses, made by the defendant; and one of them also proved his proximity to the houses at the time of the burning; that the fire occurred about 8 or 9 o'clock at night; that the moon was shining brightly, and he saw the defendant distinctly. The hostile feelings of the defendant to the owner of the houses were otherwise proved. One of these witnesses, having disclaimed ill-feeling towards the defendant, stated, on cross-examination, that he was assisting in the prosecution, and had told the officer where the defendant could be found and arrested; that since the commencement of this prosecution, the defendant had cursed him, and had commenced against him two malicious prosecutions, and that he had offered to fight the defendant. There was evidence introduced by the defendant, tending to show that he was not, and could not have been, present at the time the houses were set fire to and burned, nor where the witness for the State had testified seeing him; and that on the night of the burning, the moon did not rise until after 11 o'clock. The defendant requested seven instructions to the jury, which were refused. Five of these affirm, in varying forms of expression, that a witness who intentionally gives false testimony, as to any material fact, is to be wholly discredited by the jury. Two others affirm, in substance, that a conviction could not be had on proof that the fire was set to the store-house, and not to the dwelling.

[Grimes v. The State.]

1. The credibility of witnesses is matter for the consideration of the jury, guided by such instructions from the court as the nature and character of the evidence, and the particular case, may require. No invariable and inflexible rule of law can, or ought to be, applied to all cases, and to all evidence. There is no maxim of the law of evidence requiring greater caution in its application, than that which was invoked by the defendant in the several instructions refused. It is said by Starkie: " As the credit due to a witness is founded on general experience of human veracity, it follows, that a witness who gives false testimony, as to one particular, cannot be credited as to any, according to the legal maxim, *falsum in uno, falsum in omnibus*. The presumption that the witness will declare the truth ceases as soon as it manifestly appears that he is capable of perjury. Faith in a witness' testimony cannot be partial, or fractional; when any material fact rests on his testimony, the degree of credit due to him must be ascertained, and according to the result his testimony is to be credited or rejected." It is thus explained, that the falsity of the evidence must result from design, and not from mere mistake, or infirmity, which affects only the character of the witness for accuracy. Nor is it applied to evidence favorable to the party against whom the witness may be called.—1 Stark. Ev. 873, marg. 767, top, (Sharswood's Ed.).

The maxim was, it may be, formerly regarded as more inflexible, and of larger application, than it is now by the current of authority. It is borrowed from the 'civil law, and was particularly directed to tribunals charged with the determination of matters of fact, and was by them applied according to the facts of the particular case. It is generally admitted, by the courts of common law making the most rigid application of the maxim, that if the witness is corroborated by unexceptionable evidence, the jury are not bound to discredit him. We are prepared to follow the line of authorities which hold the maxim is not a rule of law, operating a disqualification of the witness, to be given in charge to the jury, as imperatively binding them—that it is to be applied by the jury, according to their sound judgment, for the ascertainment, and not for the exclusion of truth.—*State v. Williams*, 2 Jones (Law), 257; *Parsons v. Huff*, 41 Me. 410; *Knowles v. The People*, 15 Mich. 408; *Fisher v. The People, Ib.* 135; *Mead v. McGraw*, 19 Ohio St. 55; *Shellabarger v. Nafus*, 15 Kansas, 547; *Blanchard v. Pratt*, 37 Ill. 243; *Calloman v. Shaw*, 24 Iowa, 441; *Mercer v. Wright*, 3 Wisc. 568; *Wilkins v. Earle*, 44 N. Y. 182; *Moore v. Jones*, 13 Ala. 296; 1 Whart. Ev. § 412.

[McNeezer v. The State.]

There are so many considerations, affecting the credibility of a witness, that it is far better, and more promotive of the ends of justice, to leave the jury free in each case to determine, in view of all the evidence, the witnesses whom they will credit, or the parts of the evidence of any witness which they will credit, and which they will discredit than to fetter their judgment by inflexible rules, which may compel them to conclusions they would not otherwise reach. Against the credibility of any witness, it is a strong circumstance, weighing heavily, that he is ascertained to have sworn falsely in regard to some material fact. Yet the jury may find a reason, or motive, for his falsity in that particular, which would not operate upon him as to other facts. "It is said, for instance, to be as much a point of honor for an adulterer to shield his paramour under oath, as it is to shield her in conversation." The several instructions to which we have referred, were properly refused.

2. The remaining instructions were properly refused. Setting fire to the store-house, with the intent that the fire should be communicated to, and burn the dwelling-house, is, in law, deemed the burning of the latter.—1 Bish. Crim. Law, § 318; *Gage v. Shelton*, 3 Rich. (Law) 242.

We find no error in the record, and the judgment must be affirmed.