# Jordan *v.* State.

### *Indictment for Murder.*

1. *Former conviction of murder in second degree, as acquittal of higher offense ; special jury on second trial.*—On a trial under an indictment for murder, a conviction of murder in the second degree is an acquittal of the higher offense ; yet it must be specially pleaded on a second trial, and is not admissible as evidence under the plea of not guilty ; and not being specially pleaded, the defendant is entitled to a special *venire* on the second trial, as if there had been no former trial.

2. *Relevancy of evidence as to conduct of parties preceding homicide.*—As a general rule, all the parts of one continuous transaction, though not shown to have any immediate connection with the offense which was the consummation of all the circumstances, and facts proximate to its commission which tend to shed light on the main inquiry, are admissible as evidence ; and under an indictment for murder, it being shown that the homicide was committed at a house where all the parties, with others, were engaged in a frolic where there was dancing and drinking, all the occurrences of the evening may be regarded as constituting one continuous transaction, and are admissible evidence under this rule.

3. *Refusal to flee, and surrender, as evidence for defendant.*—When the prosecution has not adduced any evidence as to the defendant's conduct or declarations after the commission of the offense charged, his subsequent acts and declarations, refusing to flee and surrendering himself, are not admissible as evidence for him.

4. *Dying declarations.*—On the evidence contained in the present record, the dying declarations of the deceased were made under a sense of impending death, and were properly admitted as evidence.

5. *Charge as to testimony of witness making false statement.*—The tendency of modern authority is to relax the severity and restrict the application of the maxim, *Falsus in uno falsus in omnibus ;* yet, while the jury are not bound to discard entirely the testimony of a witness who has made a false statement, they may do so in their discretion, and may be so instructed.

6. *Charge as to self-defense.*—A charge asked, invoking the doctrine of self-defense, but ignoring the question of fault on the defendant's part in bringing on the difficulty, and means of escape open to him, is properly refused, unless the evidence as to those points is without conflict, in his favor.

7. *Homicide by one, another aiding or abetting.*—Where two brothers are jointly indicted and tried for murder, and it is shown that one fired the fatal shot, while the other cut the deceased with a knife, while running by him towards the defendant who had the pistol, the one who cut with the knife can not be convicted, as aiding and abetting his brother, unless there was preconcert of purpose between them or unless he aided and abetted his brother, having knowledge of the latter's purpose.

8. *Community of purpose, how shown.*—A community of purpose may be established by circumstantial, as well as by direct evidence.

9. *Charge selecting part of evidence.*—A special instruction, that the jury may infer a material fact from facts hypothetically stated in connection with the other evidence, is objectionable, though by itself, it

might not work a reversal. The ascertainment of truth is not assured by charges, which select parts of the evidence and giving them special prominence, substantially instruct the jury that they, in connection with the other evidence, authorize the inference of a material fact, unless such inference is a conclusion of law from the entire evidence. They are instructions upon the effect and sufficiency of the evidence and are calculated to withdraw the consideration of the jury from the other evidence, or the want of other evidence.

APPEAL from the City Court of Montgomery.

Tried before the Hon. THOS. M. ARRINGTON.

This case comes up on appeal to this court the second time. The appellants, Jule and Handy Jordan, two colored men, were under indictment for the murder of one Albert York, also a colored man. The homicide occurred at night in the house of one Jerry Williams, in the county of Montgomery. The house consisted of two rooms with a partition wall between, in which was a door connecting the two rooms, and, on the night of the difficulty, a party was being given at this house, and for the occasion, one of the rooms was designated as the "party room" and the other as the "dancing room." The evidence on the part of the State, among other things, tended to show, that, on the night of the difficulty, defendant, Jule Jordan, being at the party, attempted to light a cigar and, in doing so, put out both lights in the "party room," leaving the room dark, and, thereupon, one Sam Williams caught hold of one Mason Taylor, and jokingly said that he (Taylor) was the only one present who would steal anything; that Taylor became angry and Jerry Williams and the deceased, Albert York, took Taylor out of the room; that one Raoul, whose wife was giving the party, came outside and began a quarrel with Taylor about taking people from the party; and defandant, Jule Jordan, came up and drawing a pistol, said, "*I will put a light hole through any one who strikes Mason Taylor.*" Whereupon Raoul, having a knife in his hand, said, "Do you mean me?" and Jule Jordan, pointing his pistol at Raoul, replied, "D—n you, I'll shoot you if you move." Then Jerry Williams and the deceased quieted this difficulty, and, as they were returning to the house, deceased took Jule Jordan's pistol from him and gave it to one Warren Beasley, and subsequently, at request of deceased, said Beasley returned the pistol to Jule Jordan. Shortly afterwards, Jule Jordan came into the "party room" with a stick in his hand and Jerry Williams and deceased took the stick from him, and while so doing, defendant, *Handy* Jordan, came up and said, "*Turn Jule loose, or I will cut you up.*" Thereupon, Jerry Williams told Handy they were not hurting Jule, and no more was then

[Jordan v. The State.]

said. *All this occurred about a half hour before the killing.*

The defendants separately moved the exclusion of all the testimony in reference to the difficulty with Mason Taylor; which motions the court refused, and the defendants separately excepted. The defendants then moved the exclusion of all the testimony *preceding* the remark of Jule Jordan, about *"putting a light hole,"* &c.; which motion was overruled and they separately excepted.

Defendants next moved the exclusion of all the testimony *after* the said remark of Jule Jordan; which the court refused, and defendants separately excepted.

They then moved the exclusion of that portion of the testimony in reference to taking the stick from Jule Jordan and what Handy said about *cutting up* some one; the court overruled the motion, and defendants separately excepted.

The evidence for the State further tended to show that deceased, after he had been shot by Jule Jordan, asked one Berry Johnson if he thought deceased would recover, and Johnson replied that he might. After this and after a visit from a physician, deceased repeatedly said he thought he would die, and remarked to said Berry Johnson: "I am not drunk, I am sober, I am in my right senses, Jule shot me and Handy cut me, and all for nothing." Defendants separately moved the exclusion of these declarations; the court overruled the motions and defendants excepted.

The physician who attended the deceased, testified that the pistol shot entered the deceased on the right side just below the 6th rib and came out on the left side between the 10th and 11th ribs. The solicitor, in the closing speech to the jury, stated that the ball came out of the deceased at a lower point on the left side than it had entered on the right side. To this statement the defendants separately objected, but the court refused to have the language withdrawn and refused to instruct the jury that this language was not proper; and defendants separately excepted.

On cross-examination of Berry Johnson, a witness for the State, he was asked by defendant, Handy Jordan, whether he had a conversation with said Handy; to which he replied that he had. Thereupon Handy Jordan offered to prove by him, that in said conversation Handy said to witness that he understood that he (Handy) was charged with cutting deceased, and asked witness if it was true; and witness replied: "George Raoul charges you with the cutting, and you had better leave," and (pulling out a twenty dollar gold piece) said, "I will lend you the money to go on," and Handy replied, "I've done nothing and wont run away." The court, on the objection of the solici-

[Jordan v. The State.]

tor, refused to allow Handy Jordan to prove this conversation, and he excepted.

Said Handy also offered to prove by one Campbell, a white man, that said Campbell and Handy had been raised up together, and Handy had great confidence in said Campbell, and on the evening of the day after the killing, Handy went to Campbell's house and asked Campbell to go with him to Montgomery to go on his bond, and Campbell told him he would do so, but on account of business he could not for several days, and Handy then remained on Campbell's plantation until Campbell could get off to come with him to Montgomery. The court, on the objection of the solicitor, refused to allow this testimony to be given, and Handy excepted.

Said Handy then offered to show, by his own testimony, that on the morning after the difficulty, about daylight, he was informed at his house that he was charged with cutting the deceased, and immediately went over to where deceased was, and asked Berry Johnson if any such charge had been made. The solicitor objected to this testimony being given; the court sustained the objection, and Handy excepted.

Said Handy further offered to prove by his own testimony, that Berry Johnson told him, there was such a charge against him made by George Raoul, and that he had better run away, and that Berry Johnson offered him a twenty dollar gold piece to use in going away. The solicitor objected to. this being proved, the court sustained the objection, and Handy excepted.

The testimony of the State, as to the circumstances immediately attending the killing, tended to show that about a half hour after the first difficulty, Mason Taylor became involved in a dispute at the fire-place in the "dance-room," and deceased, who was playing the accordeon for the dance, went to him and saying, "Mason Taylor, d—n you, I told you to stop this fussing," knocked said Taylor down. Thereupon Jule Jordan said, "you ought not to strike Mason Taylor;" and deceased then approached Jule Jordan, but turned and went out of the house. Soon afterwards deceased came back into the house and started across the room in the direction of Jule Jordan, having no weapon in his hand. As deceased passed the fire-place in moving towards Jule Jordan, Handy Jordan, who had a few moments before come into the room, cut the deceased in the right shoulder and deceased turned his face towards Handy, and, as he did so, he was shot by Jule Jordan, who was standing near the rear wall of said room, and deceased died from the shot on the following afternoon. The physicians testified

that the knife wound was of little consequence and was not fatal. Other witnesses, who dressed deceased after death, testified that the knife wound was discharging watery matter after the death of deceased.

The testimony of the defendants, as to what occurred at the time of the killing, tended to show that Jule Jordan said to the deceased, when the latter had struck Mason Taylor, "York, you ought to be ashamed of yourself for striking Mason Taylor that way," and deceased replied: "D—— n it, if you take it up I will give you some; I have wanted to fix you all night," and then deceased started towards Jule, but was caught and taken out of the house; that almost immediately afterwards deceased rushed back into the house, having in his hand a white-oak wagon standard about as large as a man's wrist and about two feet long, and advanced rapidly toward Jule; that Jule retreated till he reached the back-wall of the house, when deceased caught hold of him and raised the stick in the attitude of striking, and Jule then shot him; that, during this time, Handy Jordan was in the other room and came to the partition door and inquired what the matter was. One witness for the State testified that Handy in passing from the "party-room" to the "dance-room," in which the killing took place, said: "I'll cut the heart out of any man who interferes with Jule," but after this remark went back to the "party-room" before the shooting.

The State introduced witnesses who testified they were present at the former trial of this case and that Jule Jordan, Dan Douglass and Ebb Carter, on said trial, made different statements from those made by them on the present trial.

The foregoing is substantially all the testimony material to an understanding of the rulings of the court and the charges given and refused, to which exceptions were taken by defendants, and which are here assigned as error.

The court, at the request of the solicitor, in writing, gave the following charges:

"1. When life is taken by the direct use of a deadly weapon, the law presumes that the killing was malicious, and casts on the defendant the *onus* of rebutting it, unless the evidence establishing the killing also shows circumstances of justification, excuse, or mitigation, which overturn the presumption."

"2. In weighing the testimony of Jule Jordan, Dan Douglass and Ebb Carter, the jury may look to the fact, if proven, that said witnesses have made different statements on a former trial of the case with those testified to in this trial, and, if they believe said witnesses have done so wil-

fully and corruptly, and, if they further find that said witnesses have been contradicted by other witnesses as to material facts, they may disregard the testimony of such witnesses altogether."

"3. Before either of the defendants can be acquitted on the doctrine of self-defense, three essential elements must be found to exist: 1st. The defendant must be free from fault, that is, he must not say or do anything for the purpose of provoking a difficulty, nor must he be disregardful of the consequences in this respect of any wrongful word or act. 2d. There must be a present, impending peril to life or of great bodily harm, either real or so apparent, as to create the *bona fide* belief of an existing necessity; and, 3d, there must be no convenient or reasonable mode of escape by retreat or declining the combat."

"4. If the jury believe from the evidence, beyond a reasonable doubt, that the defendant, Jule Jordan, had formed the design to take the life of any person who should strike Mason Taylor, and, in pursuance of said design so formed, Jule Jordan brought on a difficulty with deceased, who had stricken Mason Taylor, and in that difficulty took the life of the deceased, then, although the said Jule Jordan was about to be struck by deceased, the said Jule Jordan would be guilty of murder; and, if Handy Jordan was present aiding and abetting Jule Jordan, he also would be guilty of murder, if it occurred in this county and before the finding of the indictment."

"5. In determining whether or not there was a community of design or purpose between the defendants, the jury may consider the fact, if proven, that Jule Jordan had made a threat to put a light hole through any man who struck Mason Taylor; the further fact, if proven, that Handy Jordan had said he would cut the heart out of any person who interfered with his brother; the further fact, if proven, that about the time a dispute arose between Mason Taylor and the deceased, Handy Jordan, having been in the other room previously, came into the room in which the dispute arose and took a position near the fire-place; and the further fact, if proven, that as the deceased passed said fire-place Handy Jordan cut him, and immediately thereafter Jule Jordan shot the deceased, in connection with all the other evidence in the case; and the jury may find the existence of the community of design or purpose, although no witness has testified he heard the defendants agree to take the life of the deceased."

To the giving of each of these charges, the defendants separately excepted.

[Jordan v. The State.]

The defendants asked, in writing, the following charges :

" 1.   If the jury do not find from the evidence, beyond all reasonable doubt, that Jule Jordan shot and killed Albert York with malice and without a well grounded belief that his own life was then and there in danger, and without reasonable apprehension of great bodily harm, then the jury should acquit the defendant, Jule Jordan, of murder and manslaughter."

" 2.   If the jury, on all the evidence, have a reasonable doubt as to whether Jule Jordan, at the time he shot Albert York, had a well grounded belief that his own life was in danger, or that he was in danger of great bodily harm, then the jury should find him not guilty, unless the evidence shows that Jule Jordan provoked or brought about the conflict."

" 3.   Evidence merely, that one defendant shot the deceased and the other cut him, without evidence of previous agreement or pre-concert between them, is not sufficient to show a conspiracy."

" 4.   If the jury, after considering all the evidence, have a reasonable doubt as to whether Jule Jordan shot Albert York under a well founded belief, that there existed an imperious necessity at the time for said shooting, in order to protect his life or limb, then the jury must conclude that such imperious necessity for such killing existed and must acquit the defendant, Jule Jordan."

" 5.   If the jury believe from the evidence that at the time Jule Jordan shot Albert York, the said Albert York had a piece of wood raised to strike Jule Jordan, and that from the situation a reasonable man would infer that he was in impending danger to life or limb from a blow with said piece of wood in the hands of said Albert York, then Jule Jordan had a right to defend himself ; and, if to save his own life, or to prevent the said York from doing him great bodily harm, or under a reasonable belief, that he was in impending danger of life or limb, he fired the pistol at deceased, then Jule Jordan acted in self-defense; and the jury must acquit said Jule Jordan."

" 6.   If the jury believe from the evidence that about half an hour before the defendant, Jule Jordan, shot Albert York, Jule remarked that he " would put a light hole through any one who struck Mason Taylor," and that at the time York struck Taylor, the defendant, Jule, mildly remonstrated with him by saying, " You ought to be ashamed of yourself for striking Taylor that way," and that thereupon York immediately said, 'D——n it, if you take it up, I'll give you some,' went into the yard and returned with a large

[Jordan v. The State.]

stick and was advancing on defendant when he was shot, then the defendant, Jule Jordan, can invoke the doctrine of self-defense, and they must acquit the defendant, Jule Jordan, if the jury further believe, that at the time the shot was fired, the defendant, Jule, had reason to believe that there was an imperious impending necessity to shoot, to save his own life or prevent great bodily harm."

The court refused each of these charges, and defendants separately excepted to the refusal to give each of the charges numbered 1, 2 and 3, and defendant, Jule Jordan, excepted to the refusal to give each of the charges numbered 4, 5 and 6.

THOS. H. WATTS, JR., and ALEX. TROY, for appellants. 1. F. B. Durr is shown by the record to have been sworn as a grand juror, but his name does not appear among those returned by the sheriff as served. 2. The testimony as to the first difficulty, a half hour before the killing, was not part of the *res gestœ*. If admissible against Jule Jordan, it was not as against Handy, who was not present. Appellants separately excepted to this testimony. 3. The evidence as to what Handy said a half hour before the killing, was not admissible. 4. The dying declarations should have been excluded, because they were made to Berry Johnson, who at the time told deceased he might get well, and because they show deliberation inconsistent with the belief of impending death. 5. The remark of the solicitor to the jury, that the ball came out of the deceased at a lower point on the left side than it entered on the right, tended to show the position of the parties at the time of the shooting, and was not warranted by the evidence. There was no evidence, that the tenth or eleventh rib was lower than the sixth; it depends upon whether the count is commenced from above or below. 6. The conversation between Handy Jordan and Berry Johnson was admissible as part of the *res gestœ*. Handy should also have been permitted to prove, that as soon as informed of the charge against him, he went to where the dead man was to inquire about it, and, also, the cause of his delay in surrendering himself to the sheriff; because, it is permissible for the State to prove flight as evidence of guilt, and Handy, according to the evidence, did not surrender until four or five days after the killing. 7. The *first* charge for the State was not good in law, and was abstract as to Handy, there being no evidence that the cut was fatal or that the knife used was a deadly weapon. 8. The *second* charge for the State invades the province of the jury, is confusing and does not lay down a proper rule for weighing

[Jordan v. The State.]

testimony. - *Childs v. State,* 76 Ala. 93. All that is necessary under this charge is that the witnesses mentioned therein should have been *contradicted* by other witnesses. 9. The *first* proposition of the State's *third* charge is abstract as to both Jule and Handy, because Handy did not set up self-defense, and there is no evidence that either provoked the difficulty, or were guilty of any wrongful word or act *towards the deceased* before the fatal difficulty. It is not necessary, that a defendant be *absolutely* free from fault; he need be only *reasonably* free from it. The *third* proposition of this charge is not good in law. 10. The *fourth* charge given for the State can not be sustained, because it contains the elements of murder in the first degree, and asserts, that, on the facts recited, Jule Jordan would be guilty of murder; when, in fact, he was being tried for murder in the second degree, having been acquitted on former trial of murder in the first degree. It matters not, that there could have been no conviction of murder in the first degree; the charge may have influenced the jury in fixing the punishment.—*State v. Mitchell,* 60 Ala. 35. The charge does not require, in order to make Handy an aider and abetter of Jule, that Handy should have known and participated in the *design* of Jule; and there was no evidence tending to show that the wound inflicted by Handy produced death.—*Jule Jordan et al. v. State,* in MSS. 11. The *fifth* charge for the State selects certain parts of the evidence as proof of a conspiracy. Furthermore, this charge might impress the jury, that they were authorized to infer that there was a community of purpose or design, notwithstanding they were not satisfied thereof by the evidence beyond a reasonable doubt. 12. The charges asked by the appellants should have been given.

T. N. McCLELLAN, Attorney-General, *contra.*—It is submitted that, the record in the court below showing a former trial, conviction of murder in second degree, and consequent acquittal of the capital offense originally charged, there was no error in proceeding with this trial without a special jury. Evidence of first difficulty with Taylor was competent at least against one defendant. In such case it should not be excluded at all, but limited by charge, if requested by other defendant.—1 Brick. Dig. 810, §§ 98-99; *Lawson et al. v. State,* 20 Ala. 65. The motions to exclude all evidence of the first difficulty with Taylor " before " and " after " "the remark of Jule Jordan," &c., were properly overruled.—*Boswell v. State,* 63 Ala. 507; *Burns v. State,* 49 Ala. 370; *Shorter v. State,* 63 Ala. 129; *Browder v. State,* 52 Ala. 349. The dying declarations were properly admit-

[Jordan v. The State.]

ted.—*Ward v. State*, 78 Ala. 444, and cases cited. Courts
judicially know that the 10th rib is below the 6th.—*Mc-
Daniel v. State*, 76 Ala. 1, and no error, therefore, was com-
mitted in allowing solicitor to refer to the evidence as
showing that the ball passed out at a lower point than it
entered. Evidence of conduct and statements of one of the
defendants subsequent to killing, was properly excluded.
*Martin v. State*, 77 Ala. 10; *Chamblee v. State*, 78 Ala. 468.
Charge 1, given at request of State, is a correct exposition
of law as to the presumption of malice from use of deadly
weapon.—3 Brick. Dig. 216, § 524, *et seq.* Nor was this charge
abstract.—*Sylvester v. State*, 71 Ala. 17. But if abstract as to
one defendant, the State had a right to have it given as
against the other; and if merely abstract as to both, it will
not work a reversal. Explanatory charges should have been
requested.—*Mathews v. State*, 55 Ala. 65; *McAdory v. State*,
59 Ala. 92; 3 Brick. Dig. 113, §§ 106 *et seq.* Second charge
asked by solicitor is unobjectionable.—*Childs v. State*, 76
Ala. 94. Charge 3 asked by prosecution, correctly states
the doctrine of self-defense.—*Cross v. State*, 63 Ala. 40;
3 Brick. Dig. 220-221. The term "murder" is equally appli-
cable as a description of the offense to the crime in either
degree. Hence, granting that defendants could not be con-
victed of murder in the first degree, the 4th charge by the
prosecution, which instructed the jury that if they believed
the evidence showed a certain state of facts, the defendants
should be convicted of "murder," was not misleading.
*Mitchell v. State*, 60 Ala. 26; *Ex parte Nettles*, 58 Ala. 268;
3 Brick. Dig. 213, §§ 473 *et seq.* The doctrine announced in
this case on former appeal—that in absence of concert, he
who strikes independently and not fatally, in a difficulty in
which another delivers the mortal blow, is not responsible
for the consequences of the latter's act—considered, and
charge 4 argued not to be in conflict with the former de-
cision. The evidence of complicity—"aiding and abetting"—
reviewed and charge 4 argued not to be abstract or mis-
leading. The evidence of Handy's presence and aid and
encouragement of the other defendant was sufficient to
support a verdict against him as principal.—*Raiford v.
State*, 50 Ala. 106.

CLOPTON, J.—The record does not show that any day
was set, or special jurors summoned for the trial of the de-
fendants, though the indictment charged a capital offense.
Notwithstanding the defendants, on a former trial, were
convicted of murder in the second degree, which operates
an acquittal of the higher grade of the offense, in order that

[Jordan v. The State.]

they may take advantage of such former acquittal, it must, under our rulings, be specially pleaded. The record can not be introduced in evidence under the plea of not guilty. Had the plea of former acquittal been interposed and sustained by the proof, or admitted by the prosecution, the charge of the capital offense would have been, in law and fact, eliminated from the indictment; the trial would have been only on a charge of murder in the second degree; and the defendants would not have been entitled to a special *venire.* The defendants, so far as shown by the record, did not interpose the special plea, but went to trial on the plea of not guilty. The defense of *autrefois acquit* must be regarded as waived. There was, therefore, no modification of the indictment as originally found by the grand jury. As the indictment charges a capital offense, and there was no plea of former acquittal, the same proceedings should have been had in organizing the jury, as if there had not been a former trial, or verdict of acquittal.—*Rickles v. The State*, 68 Ala. 538; *Jackson v. The State*, 78 Ala. 471. The proper practice is stated in *De Arman v. The State*, 77 Ala. 10.

In respect to the relevancy of evidence, the general rule is, that it must be confined to the points in issue, and no circumstance is admissible, which does not tend to establish a fact material to the prosecution or defense, or from which no presumption or inference can be reasonably drawn in reference to a material fact or inquiry involved in the issue. It is often difficult to determine when a fact or circumstance is too remote to aid the jury in arriving at a conclusion on the issues to be tried. But it may be said generally, that all parts of one continuous transaction, though not shown to have any immediate connection with the offense—the culmination of all the circumstances—and facts, proximate to the consummation of the crime, which tend to shed light on the main inquiry, are admissible. The occurrences in which the deceased, Jule Jordan and Mason Taylor, were involved at the place of the homicide and during the same evening, may be regarded as constituting a continuous transaction, though brief intervals of time may have intervened; and the declaration of Jordan, that he would put a light hole through any one who struck Mason Taylor, tends to illustrate his motive and purpose in addressing deceased, when he afterwards struck Taylor.—*Armor v. The State*, 63 Ala. 173; *Mattison v. The State*, 55 Ala. 224. The evidence being admissible against one of the defendants, could not be excluded on the objection of the other, though inadmissible against him. He should relieve himself from its influence by a charge limiting its operation.

[Jordan v. The State.]

The prosecution did not bring out any declarations of Handy made after the act was done, nor introduce evidence that he had fled, and his subsequent acts and declarations were too remote to form part of the *res gestae*. The evidence in reference to his conduct and statements as to surrendering himself and his refusal to flee, was properly excluded. Its admission would have been to allow him to make evidence for himself.—*Oliver v. The State*, 17 Ala. 587 ; *Chamblee v. The State*, 78 Ala. 466.

A sufficient predicate was laid to admit the dying declarations. The deceased repeatedly declared his conviction that he would die, which. it does not seem, was impaired by the expressed opinion of the witness, Johnson, that he might get well. The jury, however, may consider the character of the dying declarations, and the circumstances under which they were made, in determining the weight to which they are entitled.—*Ward v. The State*, 78 Ala. 441.

Founded on the many and various considerations affecting the credibility of a witness, and the necessity for the ascertainment of the truth, that the jury should be left free and unembarrassed in determining what witnesses and parts of evidence they will credit, the tendency of modern authority is to relax and restrict the application of the maxim, *falsus in uno, falsus in omnibus*. The jury are not bound to wholly discredit a witness, if his testimony as to material facts is corroborated by other credible and unimpeached witnesses. In *Grimes v. The State*, 63 Ala. 166, it is said : " We are prepared to follow the line of authorities which hold the maxim is not a rule of law, operating a disqualification of the witness, to be given in charge to the jury, as imperatively binding them—that it is to be applied by the jury according to their sound judgment, for the ascertainment and not for the exclusion of truth." The charge given by the court is in accordance with this rule. It does not instruct the jury they are bound to disregard the testimony of the impeached witnesses, but left it to their sound discretion and judgment. In *Childs v. The State*, 76 Ala. 93, the charge, held to be erroneous, substantially instructed the jury, that they might disregard all the evidence of the witness, though he may have made an untrue statement in mistake. The present charge is based on the wilful and corrupt false swearing of the witnesses. In such case, there is no error in instructing the jury, that they *may* disregard their evidence. If the defendants apprehended that the jury might consider the instruction as imperative, or if the testimony of the witnesses was corroborated by other

unexceptionable evidence, they could have limited the effect and operation of the maxim by an explanatory charge.

The charges requested by the prosecution, relating to the constituent elements of murder, the presumption arising from the use of a deadly weapon, and the *onus* of overcoming it, and to the doctrine of self-defense, are in harmony with the established rulings of this court. If regarded abstract as to one of the defendants, it would not operate a reversal of the judgment. Each of the charges requested by defendants in respect to the plea of self-defense is defective in omitting the requisite hypothesis of freedom from fault in bringing the difficulty on, and of no other reasonable means of escape—one or both. An instruction may be properly refused, which ignores either one of these essentials, unless the evidence in respect thereto is without conflict, and of such character that no inference could be reasonably drawn that the defendant was at fault, or that there was another reasonable mode of escape, though the existence of neither is presumed, nor the burden of disproof imposed on the defendant.—*Tesney v. The State*, 77 Ala. 33; *Storey v. The State*, 71 Ala. 329; *De Arman v. The State, Ib.* 351; *McDaniel v. The State*, 76 Ala. 1.

There can be no question that if Handy aided and abetted his brother in the commission of the *homicide* he is a principal, responsible the same as his brother; that is if he acted in concert, afforded aid, encouraged, or consented to the particular act. But though present, if he cut the deceased as he was advancing to strike his brother, without preconcert, or knowledge, or intimation of his intent or design, and without reference to, and independent of his purpose or act, he can not be convicted as *aiding* and *abetting*. When a particular intent or formed design is requisite to constitute an offense, knowledge of its existence and a common purpose to perpetrate the offense must be shown before a person can be convicted of aiding and abetting. We so held on the former appeal.—*Jordan v. The State*, 79 Ala. 9; *State v. Hildreth*, 51 Amer. Dec. 369, and notes.

While the charges given by the court, in respect to Handy's aiding and abetting, correctly assert the general rule, and the defendants had the privilege to ask instructions defining the essentials to constitute aiding and abetting in the commission of the crime of murder, and while a common purpose may be established by circumstantial as well as direct evidence, the special instruction that the jury may infer community of purpose or design from the facts hypothetically stated in connection with the other evidence, is objectionable, though by itself it might not work a re-

[Jackson v. The State ]

versal. The ascertainment of truth is not assured by charges which select parts of the evidence, and by giving them special prominence substantially instruct the jury that they *authorize the inference* of a material and essential fact in connection with the other evidence, unless such inference is a conclusion of law from the entire evidence. They are instructions upon the effect and sufficiency of the evidence, and are calculated to withdraw the consideration of the jury from the other evidence or the want of other evidence. Among the facts stated is the threat of Jule on the occasion of the first difficulty concerning Taylor, when Handy was not present and of which it does not appear that he was afterwards informed. A fact or circumstance of which he was ignorant, does not tend to show community of purpose. Furthermore, the charge is calculated to impress the jury that they are authorized to infer community of purpose or design, notwithstanding they may have a reasonable doubt of its existence. While the evidence may be sufficient to show a resolution on the part of Handy to protect his brother in any difficulty in which he might be engaged, and to convict him of murder, if he had inflicted a mortal wound, or contributed to the death of the deceased as a distinct offense independent of his brother's, in order to convict him as an aider and abettor, the jury should be satisfied, beyond a reasonable doubt, that there was either a previous understanding to kill or injure the deceased, or that he had knowledge of the intent or design of his brother, or of facts from which such knowledge may be inferred.

Reversed and remanded.