State vs. Watkins and Cooper.

No. 14,089.

STATE OF LOUISIANA VS. ARTHUR WATKINS AND MATILDA COOPER.

### SYLLABUS.

1. Where the Supreme Court is not advised of the facts of the case, it will not assume the action of the court refusing a severance in a criminal cause to have been erroneous. This is a matter resting largely in the discretion of trial courts.

2. The District Court may, in anticipation of the exhaustion of the regular panel, direct the sheriff to summon talesmen (State vs. Moncla, 39th Annual).. Authority so to do has not been withdrawn by the 11th section of Act No. 135 of 1898. Complaint on this score, where no injury is alleged, when the talesmen selected have been accepted and sworn without objection, is purely technical and entitled to little consideration. The matter would be, at the utmost, an irregularity, which the accused could—and under the statement of the district judge—did waive.

3. Where special charges which counsel of an accused request the judge to give

to the jury, are grouped, and any one of them is wrong, the court is war-
ranted in refusing the whole.

4. The maxim *"falsus in uno, falsus in omnibus"* is not a rule of law, and cannot
  ·be forced to be charged by the court to the jury as such. Juries in criminal
  cases in Louisiana are judges of the law and the evidence, and should not be
  tied down by peremptory instructions from the court as to what their course
  must be in respect to any particular testimony. The right of the court to
  inform a jury what it is authorized to do, is something different from telling
  it "what it must do."

5. The court correctly refused to charge the jury that "the doctrine of reason-
  able doubt applies not only to the whole case, but to each and every incident
  connected with it." That statement is entirely too broad.

6. A declaration made by the judge in his charge to the jury that "one witness
  had sworn specifically to this crime" should not have been made, but it does
  not follow necessarily from the fact that it was made, that it was calculated
  to injure, and did, in fact, injure the accused. In the case at bar it occurred
  in a statement made for the benefit of and not adversely to the accused.

A PPEAL from the Ninth Judicial District, Parish of Madison.—
Randsell, J.

*Walter Guion,* Attorney General, and *David M. Evans, Jr.,* District
Attorney (*Lewis Guion,* of Counsel), for Plaintiff, Appellee.

*Jeff. B. Snyder* and *A. L. Slack,* for Defendants, Appellants.

## STATEMENT OF THE CASE.

The opinion of the court was delivered by

NICHOLLS, C. J. Defendants were indicted, jointly, with one
Philipps, for the murder of Joe Cooper. He was granted a severance,
tried and acquitted. Matilda Cooper applied for a severance on the
same grounds as those urged by Philipps, but her application was
denied.

She and Watkins were, therupon, jointly tried, the trial resulting in
a verdict of guilty without capital punishment. They appealed. In
refusing the severance, the judge stated that from the evidence in the
case of the State vs. Philipps, who was jointly indicted with the parties
then on trial, he was convinced that a severance was not necessary to
secure a fair trial for defendants; that the testimony would be the
same, except, possibly, in some minor details; that he refused the
severance for this reason.

We are not informed by the bill what the evidence in the case was.

Appellants, in their second bill of exceptions, recite that in the progress of the trial, Philipps, a co-defendant, having been tried by a jury obtained from the regular panel, it being apparent that it would be difficult to select a jury from the additional jurors, the court ordered the sheriff to summon talesmen and adjourned on the evening of the 23rd of July, and the next morning the court having refused to permit a severance on the application of Matilda Cooper, the case was ordered proceeded with.

That after examining all the jurors of the regular panel, many were rejected for cause, two peremptorily challenged by the State, and three peremptorily challenged by the accused, the entire panel of regular jurors was then exhausted. That, thereupon, the court ordered the sheriff to call the talesmen from those he had summoned the previous evening; that the accused filed a written protest to this order, which was overruled, and the talesmen ordered were sworn, when there was no juror in the box and no juror to whom the talesman could be drawn to complete the panel as argued by the defense; that the talesmen were called and sworn over their objection; that from these talesmen the jury was solely formed; that the accused went into the trial against their objection and protest.

The "protest" defendants' counsel refers to, declared that "the regular panel being exhausted and no juror having been obtained therefrom so as to form the basis or 'nest egg' upon which talesmen could be called, and the court not having ordered the Jury Commission to draw additional jurors, to be drawn in accordance with Sections 4 and 11 of Act No. 135 of 1898, the accused excepts to any talesmen being called or sworn on the trial of the cause, as there is no law or precedent for such proceeding, in view of the fact that no member of the original panel is now upon the jury."

The judge states, in reference to this complaint, "that there had been no extra jurors drawn, the court not having anticipated the need of same, that this was a matter within its discretion. That defendants' attorneys knew this. They represented Philipps, who was jointly indicted with the other defendants, and knew the evidence was practically the same in both cases. They suggested and participated in the summoning of the talesmen which was done on the day before the trial, and they did not except until they had gone into the trial of the case and the regular *venire* exhausted; five of whom were good jurors and peremptorily challenged as stated. That not to have over-

ruled defendants' exception would have been to permit them to take advantage of their own acts and make a farce of justice."

Counsel for the accused asked the court to charge the jury that "if it should believe that the testimony of any witness whose evidence has been attacked is not consistent, or if they should believe that the witness has made inconsistent and irreconcilable statements, either under oath or otherwise, which have not been accounted for or explained, then it is the duty of the jury to disregard said witness' testimony entirely. If the jury shall believe that any witness' testimony has been impeached in any one part which is material in the case, then in such event they have a right to believe that it is false in other parts, and have a right, and it is their duty, to reject the whole;" "that if the jury should believe that there is any doubt as to the credibility of any witness, then in such cases it is their duty to give the prisoners the benefit of the doubt and to reject such evidence entirely." The judge refused to give this charge and counsel excepted.

Counsel further asked the court to charge the jury as follows: "You are required, under the law, to give the accused the benefit of the doubt. By this is meant that if you have a reasonable doubt as to their guilt, you must give them the benefit of that doubt and find them not guilty, and this doctrine of reasonable doubt not only applies to the whole case, but to each and every incident connected with it. You are the sole judges of the evidence and of the credibility of the witnesses, and if you have a reasonable doubt of the truth of their statements here, you must give the accused the benefit of the doubt and you must disregard the testimony of the witness or witnesses concerning whom you have such a doubt." The judge refused to give this charge, assigning as his reasons:

1st.—That he charged the jury fully as to their being the judges of the law and the evidence, and told them they could believe or disbelieve any part of it if they pleased, and could give such faith and credit to the witnesses as they wanted to * * * and

2nd.—That on the question of reasonable doubt he read from "Sacketts' Instruction to Juries," "pages 645 and 646, paragraphs 32 and 33, which covered the ground fully; that he considered that the charges requested had been practically made and he did not think the last good law."

Appellants, in a bill of exceptions filed by them, recite that, in his charge to the jury, the court made use of the following language:

"There is one witness who has testified specifically as to the *commission of this crime,*" to which charge defendants excepted. The judge states that he made this remark for the purpose of calling the jurors' attention to the fact that there had been witnesses introduced to impeach said witness' testimony, and to tell them they were to give this impeaching testimony the same consideration as they did any other evidence in the case. The defendants, after conviction, made a motion for a new trial of character such as to call for no special reference to it.

### OPINION.

We can not say, from the record, that the judge's action in refusing a severance of trial, as between Watkins and Matilda Cooper, was error. The judge had been fully advised, he states, from the trial of the cause against Philipps, what the issues in the cause would be, and we must assume, in the absence of an affirmative showing to the contrary, that his ruling was right. The question of severance is one very much under the control of the trial courts.

The complaint made by accused as to the time and manner of obtaining talesmen, and of the time and manner of empanneling the jury, is of the most technical character. No injury whatever to the appellants, from the course pursued, is suggested. The talesmen tendered seem to have been accepted without complaint. We do not give to the 11th section of Act No. 135 of 1898, the strict construction which appellant wishes to have placed upon it, and to make the exercise of the right of the judge to order talesmen to be summoned by the sheriff in a criminal case conditioned absolutely upon the prior exhaustion of the list of regular jurors or of tales drawn by the Jury Commission.

The trial of criminal cases would be greatly hampered if each case had to be forcedly postponed until the Jury Commissions could be called together to fill up an incomplete jury. We think the court may, in anticipation of the exhaustion of the regular panel, direct the sheriff to summon talesmen. That course was held authorized in State vs. Moucla, 39 Ann. 868, and we do not think the legal situation has been changed by the Act of 1898.

After defendants' counsel had concurred, as the court states they did, in the propriety and advisibility of the course followed, they were scarcely in position to subsequently complain of it.

Appellants complain of the refusal of the court to charge the jury

upon the subject of the credibility of witnesses. The charges on that subject were grouped together and it has been repeatedly held that if any one of the instructions in the group is wrong, the judge is warranted in refusing the whole of the group. The application of this rule to the charges requested by the appellants, evidently cause their complaint to fall. In reference to the matters covered by the bill on this subject the following extract from Rice on Criminal Evidence, page —, is pertinent.

In his work on Criminal Evidence (Vol. 3, p. 293), he declares that the force of a witness' testimony depends upon the credit the jury think it entitled to, and no court has a right to lay down, for a jury, rules whereby they shall determine the force of evidence irrespective of the credence they actually give it in their own minds. (Citing People vs. Jenness, 5 Mich. 310; People vs. Wallen, 55 Mich. 497.) They are the sole judges of the credibility of the witnesses. With that the court has nothing to do, and if they find from the evidence that any witness or witnesses have wilfully testified falsely, they are at liberty to disregard the whole or any portion of such witness' or witnesses' testimony.

The author refers to Stoffer vs. State, 15 Ohio St. 487; 86 Am. Dec. 470; in which Mr. Justice Ramsey says: "An ancient maxim of the laws of evidence *falsus in uno* would seem to import such exclusion (exclusion of the entire testimony of the witnesses) by raising a presumption of law *juris et de jure,* that a witness who was certainly shown to have committed perjury upon one material point in the case, should be deemed wholly unworthy of credit upon any other, and his testimony be wholly rejected.

"In most of the cases brought to our attention in the argument where this maxim has been referred to, no attempt has been made to define its limits and proper application, while in many it has been very inaccurately used as applicable to witnesses who have been merely contradicted upon some material point, without rasing any just imputation of perjury against them."

The justice quotes from Starkie on Evidence to the effect that the doctrine of *falsus in omnibus* did not extend to the total rejection of a witness "where misrepresentation has resulted from mistake or infirmity and not from design, but though his honesty remains unimpeached, this is a consideration which necessarily affects his accuracy."

Rice declares that "the tendency of modern authority is to relax the

application of the maxim, that the jury are not bound to wholly discredit a witness if his testimony as to material facts is corroborated by other credible and unimpeached witnesses. In Grimes vs. State, 63 Ala. 166, the court said: "We are prepared to follow the line of authorities which hold the maxim is not a rule of law operating a disqualification of the witnesses to be given in charge to the jury as· imperatively binding them. That it is to be applied by the jury according to this same judgment for the ascertainment and not for the exclusion of truth. The charge given by the judge is in accordance with this rule. It does not instruct the jury that they are bound to disregard the testimony of unimpeached witnesses, but left it to their sound discretion and judgment."

The maxim *falsus in uno falsus in omnibus* is not a rule of law, and should not be charged to the jury as such. Juries in this State are, in criminal cases, judges of the law and the evidence, and they should not be tied down by peremptory instructions from the court as to what their duty is in respect to any particular testimony, nor what their course in respect to the same should be as a matter of law. The right of the court to inform a jury what it might be authorized to do, is something different from telling it what it must do.

We think the judge went as far as he could legally be called upon to go in the instructions he gave to the jury on this subject. The court was correct in refusing to charge the jury that if they had a reasonable doubt as to the guilt of the accused, they must give them the benefit of that doubt and find them not guilty, and this doctrine of reasonable doubt *not only applies to the whole case, but to each and every incident connected with it*. This statement is entirely too broad. The judge informs us that certain paragraphs from Sacketts' Instructions to Juries on the question of reasonable doubt were read by him; that he considered the charges requested had been practically made and the last one requested he did not think good law.

The most serious complaint in the case is that of appellants, that the court had stated to the jury that "there was one witness who had testified specifically to the commission of this crime." The occasion under which this declaration was made by the judge is not recited by appellants in their bill of exceptions, and it is easy to understand how, under certain circumstances and conditions, such a statement might be very prejudicial, but it by no means follows from the mere fact that it was made, that it was calculated to injure or did in fact injure the accused.

The court admits it was made, but states that, when it was made by him, it was an effort to break the force of the testimony by calling the attention of the jury to the fact that the witness who had given it had been impeached and the impeaching testimony was to be considered as all other evidence in the case. The court's action was in aid of the accused, not against them. Considering the situation as a whole, we are not prepared to say that the accused was injured, though the court may have erred, as we think it did, in referring specifically to the testimony of a particular witness. We do not attribute the same serious consequences to the use by the judge of the word "crime" as counsel of appellants does. We must credit jurors with some intelligence and we must assume that the jury must have understood when the judge said that one witness had testified specifically to this crime that he meant that one witness had testified to the crime "charged," not to what he himself considered and believed to be a 'crime.' "

We see no legal ground for reversing the judgment and it is therefore affirmed.