## Brainard C. Knowles v. The People.

*Witness: Effect of false statements on remainder of testimony.* Defendant was convicted of larceny on the testimony of one McEvoy, who swore that he and defendant committed the crime. There being testimony tending to show that McEvoy had made contradictory statements on material points, the court was requested to charge the jury that if the witness had, in anything material, sworn wilfully false, that his whole testimony must be rejected by them. This was refused, but the court charged that any such testimony would seriously affect all the witness had sworn to, and that no credit should be given to any fact depending upon his statement alone; but that when corroborated by proof or circumstances, it might receive such credit as it appeared to the jury to deserve. *Held*, that there was no error in the charge.

KNOWLES *v.* THE PEOPLE.

*Omission by husband, to call his wife as a witness, effect of.* It is error to allow the omission by a husband to call his wife as a witness on his behalf concerning matters supposed to be known by her, to be urged to the jury as a circumstance tending to prove guilt. The privilege of calling her or not, at his option, would be done away with, if any inference of guilt were allowed to be drawn from such omission; and it was not the design of the law to interfere with the harmony and confidence of the marital relation.

*Heard May 4th. Decided May 14th.*

Error to Lenawee Circuit.

The defendant was convicted of larceny and sentenced to state prison.

The decision of the questions involved turns upon the charges of the court below, which, with the facts, are stated in the opinion.

*C. A. Stacy,* for plaintiff, in error,

1. No credit should be given to any witness (much less to a witness standing in the position of accomplice, as McEvoy did in this case,) who has committed willful and corrupt perjury in the very testimony, which is relied on to convict the defendant.

The maxim "*Falsus in uno, falsus in omnibus,*" ought certainly to apply in such a case, if ever. — 5 *Cow.* 253, 246.

So if his testimony be corruptly false in any particular, the whole must be rejected. — 1 *Dev.* 508; 8 *Conn.* 323; 7 *Wheaton,* 283, 338 – 9; 1 *Cow. & Hill's Notes to Phillipps Ev.* 396.

2. The legislature have carefully protected the right of the husband, to refuse to call his wife if he chooses.

If the effect of a neglect or refusal to call her as a witness is to raise a presumption of his guilt, then the provision of the statute, that she shall not be sworn against him without his consent, is nugatory.

*W. L. Stoughton,* Attorney General, for the People,

1. The court did not err in refusing to charge the jury that if McEvoy swore willfully and knowingly false,

in a material matter, his *whole testimony* must be rejected. — 1 *Stark. Ev.* 520; *Doug.* 751; 7 *Wheat.* 2 – 3; 5 *Cow.* 243; 17 *Maine,* 267.

2. The charge asked was an abstract question, not necessarily arising on the evidence; and a refusal to give a charge requested in such a case, is no error. — 1 *Cranch,* 310; 1 *Curtis' Dig.* 415.

3. The omission by the defendant to call his wife as a witness, she being present in court, is a circumstance which the jury may take into consideration against him.

The Sess. L. of 1861, make the husband and wife competent witnesses for and against each other in all criminal cases. — *Sess. L.* 1861, 168. But, neither the husband nor wife can be examined for or against the other, without his or her consent. — *Ibid.* 169.

*a.* The general rule is, that when a party has the means in his power of rebutting and explaining the evidence adduced against him, if it does not tend to the truth, the omission to do so, furnishes a strong inference against him. — *Broom's Legal Max.* 843; 3 *Stark. Ev.* 937; 1 *Greenleaf's Ev.* § 37; 1 *Whart. Am. C. L.* § 722; 3 *Phil. on Ev.* 473, *and cases there cited; Cowp.* 65.

*b.* The testimony of the wife is placed by the act of 1861 upon the same footing as that of any other witness, with one exception: she cannot testify for or against the husband without his consent. The right to exclude her testimony is a personal privilege with him, and his refusal to offer such evidence naturally leads to the inference that if adduced it would operate unfavorably against him.

The common law disability is removed, and the wife stands in the same relation to her husband, when on trial, as any other witness, except his right to exclude her testimony.

It will be observed that this question grew out of the evidence offered by the defendant. He attempted

to meet the case made by the prosecution by setting up an *alibi*, and for this purpose offered evidence tending to show that at the time of the commission of the offense he was at home, in company with his wife. It further appears that she was present in court. The jury were compelled to pass upon the evidence offered by him. They were entitled to a full and fair showing on his part. If it appeared from his own evidence that he had neglected or refused to call a competent witness who had superior means of information, and was within his reach, and actually in court, it would seem to be contrary to every principle of the law of evidence, and the ordinary rules for the investigation of truth, to exclude that fact from their consideration.

4. The rule at common law which excludes the husband or wife, as a witness for or against the other, was founded partly on the supposed identity of their legal interests, and partly on principles of public policy. — Neither of the reasons for the old rule can aid the case of the plaintiff in error.

The legislature has made a material change, and the true reason of that change, undoubtedly, was to enlarge the field of investigation, and to enable all the facts and circumstances surrounding a criminal case to be submitted to the consideration of the jury.

CAMPBELL J.

Defendant was convicted in the Circuit Court for the county of Lenawee of a charge of larceny, in stealing cattle. The conviction was had upon the testimony of Matthew McEvoy, who swore that he and the defendant committed the crime.

There being testimony tending to show that McEvoy had made contradictory statements on points material to the issue, the defendant asked the court to charge the jury that, if the witness had in any thing material sworn

wilfully and knowingly to that which was false, his whole testimony must be disregarded by the jury. This request was refused, and the court charged in substance that any such falsehood would seriously affect all of the witness's testimony, and that no credit should be given to any fact dependent upon his statements alone; but that where corroborated by proofs or circumstances, it might receive such credit as it might appear to the jury to deserve.

There was no error in allowing the jury, with these cautions, to consider the testimony. There has never been any positive rule of law which excluded evidence from consideration entirely, on account of the wilful falsehood of a witness as to some portions of his testimony. Such disregard of his oath is enough to justify the belief that the witness is capable of any amount of falsification, and to make it no more than prudent to regard all that he says with strong suspicion, and to place no reliance on his mere statements; but when testimony is once before the jury, the weight and credibility of every portion of it is for them, and not for the court, to determine. The duty of the court is to give them such full cautions as will lead them to the intelligent performance of their functions; but if the testimony produces a clear and undoubted conviction in their minds, they may act upon that conviction, whether the evidence comes from an honest or a corrupt source. The court in the case at bar gave them to understand that no statement should be credited, unless rendered probable by circumstances of a corroborating nature. We think the matter was not laid before them erroneously.

Defendant having introduced testimony tending to prove that he was at home at the time when the larceny was said to have been committed, and there being evidence tending to show that his wife was at home at the same time, the court refused to instruct the jury that they had no right to consider the omission of defendant to call her as a witness, nor to allow the omission to prejudice him

in their deliberation, and, on the contrary, instructed them that such neglect might be taken into consideration against him.

There is no doubt that a jury may regard with suspicion a failure of a party to produce testimony which is in his power, and which would throw light upon matters left without other proper evidence. But this rule has never been applied to those cases where the law, on grounds of public policy, has established privileges against being compelled to produce it. It is well settled that where a man avails himself of his privilege, to decline answering questions, no unfavorable inference can be allowed to be drawn from his silence; and in *Carne v. Litchfield*, 2 *Mich.* 340, the refusal of the Circuit Court to prevent counsel from commenting on such a claim of privilege, was held to be sufficient ground for reversing a judgment. Our statute, in changing the common law rule concerning the testimonial incapacities of husband and wife, has not made them competent witnesses for or against each other without restriction, but has prohibited either from testifying without the consent of the other, and from divulging mutual confidences without mutual consent. It is very manifest that the rule which prevents a wife from being compelled to testify against her husband, is based on principles which are deemed important to preserve the marriage relation as one of full confidence and affection, and that this is regarded as more important to the public welfare than that the exigencies of law suits should authorize domestic peace to be disregarded, for the sake of ferreting out some fact not within the knowledge of strangers. If the omission to call a wife upon the stand is to be treated as warranting the conclusion that her testimony would be adverse, then the privilege is entirely destroyed, and she will have to be called at all events. The power of declining to call such a witness is not reserved to protect from awkward disclosures, but out of respect to the better feelings of

humanity, which impel all right-minded persons to shrink from any needless exposure to the ordeal of a public examination, of persons who would be unnatural and unworthy if they did not feel a very strong bias in favor of their consorts. The law, in permitting husbands and wives to testify on behalf of each other, can not have contemplated that any moral coercion should enable others to force them into the witness box. Lord Mansfield, in *Blatch v. Archer*, *Cowp.* 63, admitting the general rule that an omission to produce accessible evidence is suspicious, declared that it would have been very improper, without necessity, to call a son in a case where his father was interested, and held that the principle did not apply to such a state of things. Yet a son was always competent for any party. But the relation of husband and wife has always been held as one which should not be exposed to any needless influences which might interfere with the most unreserved confidence and security.

The court should not permit counsel to comment on the failure to produce such a witness, and should not allow the jury to give it any prejudicial weight. In the present case, there was peculiar impropriety in doing so, inasmuch as the testimony, if given, could have been but cumulative. There are no degrees in parol evidence, and there is no rule which requires a fact to be proved by more than one witness, except in case of some peculiar offenses. But the main objection, and the only one urged, rests upon the impropriety of putting such a coercive influence upon parties as to compel them to do what the law leaves optional, and to make it incumbent on them to sacrifice the restraints of delicacy and affection, or stand convicted by a forced implied confession.

The ruling was erroneous, and the judgment must be reversed, and a new trial granted.

The other Justices concurred.