## AGNES LUDLOW v. ESTATE OF PHINEAS PEARL.

### Claim against estates—Proof of value—Offsets.

1. A claim against an estate was rejected by the commissioners thereon. On appeal the claimant sought to raise his figures. *Held* proper to show in defense that the claim as originally presented was smaller. Such a showing would not be conclusive, but the original claim would be in the nature of an admission as to value.

2. A party to a case has a right to have his theory of it submitted to the jury if it is consistent with the evidence; and the judge, cannot say that the theory of one party is more plausible than that of the other.

3. An old man went to live at the house of a poor woman not related to him, and after his death she presented a claim for the value of his board and for his care. No agreement was shown to have existed between them, and it appeared that both had continuously contributed to the joint support, without, so far as known, keeping any mutual accounts. *Held*, that the defense were entitled to have the case submitted to the jury on the theory that the understanding

between them may have been that neither was to charge for what was furnished for the benefit of both.

4. Where a claim was brought against an estate for the value of services rendered to decedent, the defense were entitled to give evidence in offset, of contributions by decedent to the support of claimant as well as of himself; and such proofs could not be excluded on the ground that they were not specific as to particulars.

5. A man who had a mortgage on a house went to live with its owner, and after his death the latter made a claim against his estate for the value of his board and for services. The claimant gave evidence tending to show that decedent had been boarding out his mortgage and had finally released it. *Held*, that if the jury took that view of the case, the estate was entitled to have the amount of the mortgage deducted from the claim.

6. A judge has no right to comment adversely before the jury upon the conduct of a litigant in taking the benefit of a statutory privilege— such as the rule which excludes the testimony of a party as to facts known equally to a deceased opponent.

Error to Berrien. (A. J. Smith, J.) Oct. 21.—Nov. 19.

Appeal from commissioners on estate. The estate brings error. Reversed.

*G. M. Valentine* and *O. W. Coolidge* for appellant estate. Whenever two parties live together under no special arrangement, constituting one household, and one does labor for the common benefit of both, and the other furnishes provisions, material and money for the common support and benefit, neither can recover from the other, in the absence of any express promise: *Coe v. Wager* 42 Mich. 51; *Dunlap v. Allen* 90 Ill. 108; *Hall v. Finch* 29 Wis. 278; *Carpenter v. Weller* 15 Hun 134; *Wilcox v. Wilcox* 48 Barb. 327; *Potter v. Carpenter* 76 N. Y. 157; *Davies v. Davies* 9 Can. 87; the court has no right to suggest unfavorable inferences because a party does not call an adverse party as witness where his testimony is excluded by law: *Knowles v. People* 15 Mich. 414; *Carne v. Litchfield* 2 Mich. 343; *People v. Hendrickson* 53 Mich. 525.

*Emory M. Plimpton* and *Clapp & Bridgman* for appellee.

COOLEY, C. J. This case was tried in the circuit court on appeal from commissioners. The claim was for the board

and care of the decedent for nearly six years immediately preceding his death, which took place August 15, 1882.

It appeared in evidence that the claimant in 1876 was living on a small place owned by herself, and was earning her living by cleaning house and doing other similar work for her neighbors. She had no family, and decedent had a mortgage of three hundred dollars on her place. Decedent had children, but for some reason he went to board at the house of the claimant. He was then eighty-six years of age or thereabouts, and he continued to reside there till the time of his death. There was no evidence in the case to show the understanding on which he went there. It appeared that he took a horse and a cow there, and there was some evidence that the cow was given to the claimant; but this appears to be left uncertain. It also appeared that he frequently brought groceries and took there; that he had wood, corn and pork drawn there; and it did not appear that he left at his death any account of these things against the claimant. He also, it would seem, gave the claimant a sewing-machine. In December, 1876, he loaned her two hundred and twenty dollars, for which she gave him a note which remained unpaid at his death. There was evidence that after he had lived at her house some years he said, referring to the mortgage which he held upon her place, that he was staying there to pay the mortgage, and there would be enough coming from him to cancel it at his death, and he would cancel it at once were it not for his family. In May, 1881, the promoters of a railroad scheme desired a right of way through the claimant's land, and claimant said she would give it if decedent would release his mortgage. He made inquiries to satisfy himself that she would have the benefit of the release in case he gave it, except as to the right of way, and having made sure of that, he gave the release. It was testified that the right of way was worth twenty dollars.

The claimant did not cease her work for others when decedent went to live with her, but she appears sometimes to have given up jobs on his account. She gave evidence that it was worth from five to eight dollars a week to board and

care for him, and the evidence on the other side tended to reduce this estimate very considerably. The defense offered evidence that when claimant first presented her demand to the commissioners she charged at the rate of three dollars and a half a week, only. This was excluded.

The plaintiff claimed to recover on a quantum meruit, on the theory that there had been no understanding between the parties in respect to compensation. The theory of the defense was that the parties had been living together on the terms that each was contributing to the support of the other, and making no charge for what was done or furnished. If the jury should not accept this theory, it was then claimed that the defense should be allowed whatever decedent had furnished to the claimant, as a set-off against her claim.

When the case went to the jury the trial judge was requested by the defense to give the following instructions:

"The jury are instructed that the fact, if it is a fact, that during all the time decedent boarded and lodged at the claimant's house no claim or demand was made upon him for the claim here in suit, or any part of it, is a circumstance tending to show that the alleged indebtedness does not exist; and that circumstance should be considered by the jury in determining their verdict.

If the jury find from the evidence in the case that the claimant furnished decedent with board, lodging and attendance, as claimed, and that decedent furnished such groceries, provisions and similar articles for household use, and that he furnished such wood and fuel as were needed for the same, then they are at liberty to infer from such evidence that the articles so furnished by him were an equivalent for the board, lodging, attendance, etc., furnished by her; and if they so find, then she cannot recover in this action.

If the jury find from the evidence that the mortgage mentioned in the evidence was not, in fact, paid by the claimant, but was discharged by the decedent in consideration of the relations existing between the parties, or in consideration of such board, lodging or attendance, then the amount of the mortgage should be set off against any claim proved in her favor in this action, less the damages she sustained by reason of releasing the right of way to the railroad company."

All these requests were refused. In his general charge the judge said to the jury among other things the following:

"Something was said upon the argument by counsel about one side furnishing provision and the other work, and neither side could recover. That is what is called a community of interest. That question does not arise here before you at all. There is no evidence of a community of interest in this case whatever. The evidence on both sides shows to the contrary.

In cases of this kind where persons are not related to each other, if one person does anything for another, the law presumes an implied promise to pay. Therefore if you find from the evidence that this old gentleman went to live with this woman at her house, and she furnished him with provision and cared for him, etc., then the law implies that he promised to pay her for it a reasonable compensation—whatever it was worth under all the circumstances.

Now in determining the question as to what it was worth, and as to the amount of offsets the old gentleman has given her, the person of all others in the world who could have told the story just as it was is precluded by the statute from giving in her testimony unless the other side consents to it, which they have not seen fit to do in this case; therefore Mrs. Ludlow, the one who knows more than anybody else, is precluded by the law from giving in her testimony, while the children and grandchildren, and children-in-law and cousins on the other side, equally interested in the money as the old gentleman himself, are allowed to come in here and testify."

And referring to the offset claimed by the defense he said:

"Now an offset has to be proved precisely as a claim would be if it was sued by a plaintiff, and evidence which would not support a claim if it had been sued will not support an offset. Therefore the court and jury are not at liberty to guess at an offset in trials between parties; the offsets must be proved. If a plaintiff sues a man for twenty articles he must specify the articles, and must prove that he had the articles and the value of the articles; the jury are not permitted to guess at the articles nor the value of the articles.

They must prove them precisely the same as if they had been sued by some individual. It must be done by items, and proof that the party had each one of these items; and where they fail to prove an item, they cannot recover for it. Wherever they can show that the old gentleman bought

an article and paid for it with money out of his pocket, that would be charged against the old lady as an offset in this case.   They might perhaps have proved a great many of these articles by the old lady, but they saw fit not to do it but to prove them in this guess-way plan, which is not evidence on which the jury can rely."

The jury returned a verdict for the claimant for nine hundred dollars and thirty-five cents.

I. We think the judge erred in not allowing the defense to show that when the claimant first presented her account it was much less than the amount she was seeking to recover and establish on the trial.   The fact, though not conclusive against her, would have been significant; for she knew what her services had been, and also whether there was any understanding in respect to compensation; and her account would have been in the nature of an admission that she was not entitled to any larger sum.   The jury should have been allowed to take it into consideration with the other evidence, and to give it such weight as they thought it deserved.

II. We also think the judge erred in instructing the jury that there was no evidence in the case tending to show that the parties were living together on an understanding that no charges were to be made by either for what was furnished for the benefit and support of both.   What the exact understanding between the parties was, if they ever had any, did not appear; but much was shown in the proof that looked like such an arrangement as the defense insisted was made; and if the jury had come to the conclusion that the theory of the defense was the one which the evidence tended to establish, we do not see how a finding to that effect could be said to be unwarranted.   It was not for the court to say, upon the evidence as it stood, that the theory upon which the claimant relied was most plausible; the fact appeared in the evidence on both sides that there had been continuous contributions by each of the parties to the joint support, and it was not shown that account was being made of these on either side, as would be looked for if they were dealing with each other on the basis of mutual accounts.   An inference

that what one furnished was to offset what was supplied by the other might not be an unnatural or unreasonable one under the circumstances; and the fact that the parties were not related to each other would not preclude its being drawn. *Dunlap v. Allen* 90 Ill. 108. The fact seems to be that both were dependent; she from poverty and he from age; and a mutual arrangement of the sort suggested might have been altogether reasonable.

III. The judge erred in putting entirely out of view all the evidence of groceries etc., furnished by the decedent which could not be specified particularly, and the value of the items shown. The proofs were not put in for the purpose exclusively of establishing offsets; but also because it tended to support the theory of common interest. The jury had a right to consider it for its bearing upon that theory; but if that theory was rejected, it would still have importance. The suit involved the value of the claimant's services, and there being no special contract, the value must be judged of in view of all the circumstances. And it cannot be held that the circumstance that decedent was furnishing a considerable portion of the provisions was one of no importance in that inquiry, or that what she supplied to him was worth just as much when he furnished a part of the provisions as it would have been if she had furnished them all. It was to be regretted that the case could not be made more certain; but the elements of uncertainty were not in the case of one party exclusively; the judge himself took occasion to remark upon the impossibility of the claimant giving proof of her daily and hourly services for the decedent; but, nevertheless, he very properly allowed witnesses to express opinions in respect to value; and it is evident from the verdict that the jury based their verdict upon these opinions. But if these were admissible, at least equally so was the evidence of parties who could testify to articles being furnished by the decedent for household use.

IV. If the jury accepted the claimant's theory of the case, it would seem plain that the estate was entitled to be allowed the amount of the mortgage, after deducting the value of the

right of way. The claimant had given evidence which tended to show that the decedent was being boarded by her by way of payment of the mortgage ; and when afterwards it appeared that he discharged the mortgage for her benefit, the right to have the amount applied upon the board would follow legitimately. The claimant would now have the transaction assume the form of a discharge of the mortgage in consideration of her releasing the right of way : a most improbable thing in view of the small value of the right of way, and of the entire absence of evidence to show the decedent to have been specially interested in the railroad scheme. But all this was for the jury.

V. The remarks of the judge respecting the failure of the defense to consent to the claimant's testifying seem to have been intended as an arraignment of the statute which precludes litigants who are adverse parties to the representatives of deceased persons from testifying to matters which must, if true, have been within the knowledge of such deceased persons. They were very well calculated to impress the jury that there was some moral wrong in claiming the protection of the statute, and that the party who would take advantage of it was justly subject to unfavorable inferences. But it would be serious error purposely to give the jury such an impression. The Legislature has deemed the statute a wise and necessary one ; and the enactment of the statute has settled the policy of the State in that regard, and the courts have nothing to do but give it effect. This indirect criticism of the statute makes it worse than useless to the parties it was intended to protect ; for it suggests to juries that they are endeavoring to suppress the truth, and that their case must be regarded with suspicion for that reason. It is easy to see that a party, under such circumstances, might prejudice his case instead of aiding it by objecting to an incompetent witness giving evidence. This Court had occasion to say in *Knowles v. People* 15 Mich. 414, that unfavorable inferences could not legitimately be drawn from a party's availing himself of a statutory privilege ; and what was said in that case is applicable here. To

the same effect are *People v. Tyler* 36 Cal. 522; *State v. Cameron* 40 Vt. 555; *Devries v. Phillips* 63 N. C. 53.

The judgment must be set aside and a new trial ordered.

The other Justices concurred.