[No. 12844.  Department Two.  March 7, 1916.]

## CALHOUN, DENNY & EWING, *Appellant*, v. DAVID WHITCOMB, *Respondent*, ERNEST M. WHITCOMB, *Defendant*.[1]

TRIAL — WITNESSES — CREDIBILITY—COMMENT BY COURT—INSTRUC-TIONS—ARGUMENT OF COUNSEL.  A nonresident defendant who had not been served and who had not appeared, but testified for his co-defendant, is not singled out and given special standing before the jury as to his credibility by instructions and rulings of the court to the effect that his nonappearance as a party was not to be considered as affecting his credibility or to be considered to his prejudice; and the court properly restrained argument inviting the jury to draw the inference that his nonappearance as a party was a circumstance to be considered by the jury in judging his credibility (MORRIS, C. J., dissenting).

PARTNERSHIP—ACTIONS—EVIDENCE — INSTRUCTIONS — BROKERS — CONTRACT.  In an action against two brothers, D. & E., to recover a broker's commission for negotiating the purchase of stock in a corporation which the brothers controlled as conservators of their father's estate, the fact that D., ·in declining to purchase, referred plaintiff to E. and the estate in the East, and that E. there entered into a tentative agreement with plaintiff agreeing to pay the commissions, is not evidence that D. and E. were partners in the purchase of the stock; and it is proper for the court to instruct the jury that there was no evidence of a partnership and that the agreement made by E. would not be binding on D. without his consent, and his liability could only be fixed by evidence of prior authorization or subsequent ratification; for even if the brothers were interested together, the rules relating to the authority of general partners would not apply to a special or limited partnership or to a joint venture.

BROKERS—ACTIONS FOR COMMISSIONS—INSTRUCTIONS.  In an action to recover a broker's commission for negotiating a purchase of stock, an instruction to the effect that a broker engages to obtain for his employer the contract which he was authorized to submit, is not prejudicially erroneous, when considered as a whole in connection with other parts fully and fairly setting forth the duty of the broker merely to induce the owner of the stock to consent to enter into the contract, such owner being ready, able and willing to carry out the contract.

SAME.  In an action to recover a broker's commission for negotiating a purchase of stock, which defendant claimed was dependent

[1]Reported in 155 Pac. 759.

upon converting other common stock held by defendant as trustee into preferred stock, so that the contract took advantage of defendants trust position for his personal benefit and was void as against public policy, an instruction as to its invalidity for that reason is not prejudicially erroneous, when considered in connection with other instructions as to the presumption of honesty of action in such a case, and that the broker would nevertheless be entitled to his commissions, regardless of whether the parties contemplated a violation of law or the commission of a fraud, unless he knowingly participated in some way in the illegality or fraud.

SAME—INSTRUCTIONS—COMMENT ON EVIDENCE. In an action to recover a broker's commission for negotiating a purchase of stock, an instruction calling attention to the particular features of the case, and to the particular phases to be determined as to the probability or improbability of the truth of the evidence, cannot be said to be unfair comment on the evidence such as is prohibited by the constitution, or an argument in favor of either party, where it takes cognizance of the theories of both parties, and is more favorable to the appellant than the respondent.

SAME. In such an action, where the oral agreement to pay the broker's commissions was dependent upon the proposed contract to purchase the stock, a written memorandum of which was drawn up but not executed, being called a tentative agreement, and the purchase was part of the broker's contract of employment, it is not error for the court to instruct the jury that, unless the negotiations between the parties did result in an actual present agreement, as distinguished from a proposed proposition to be considered in the future, the defendant was not liable; especially where another part of the instruction relating to the necessity of a meeting of the minds of the parties showed clearly that the instruction as a whole related to the oral contract of employment of the plaintiff and properly submitted a disputed question of fact as to whether the things said constituted the agreement, or merely resulted in the giving of a writing which was to form the basis of a future agreement.

Appeal from a judgment of the superior court for King county, Albertson, J., entered October 17, 1914, upon the verdict of a jury rendered in favor of the defendant, in an action for a broker's commission. Affirmed.

*Donworth & Todd*, for appellant.

*Albert H. Beebe* and *Turner, Hartge & Turner*, for respondent.

Holcomb, J.—The complaint of plaintiff in this action, alleging that it is a Washington corporation engaged in the loan, brokerage, and real estate business in Seattle, and that defendants were associated together in a joint business enterprise in the transactions referred to in the complaint, and were and are partners for the purposes of those transactions, further alleged that, between June 28, 1912, and July 11, 1912, defendants employed plaintiff as a broker to negotiate the purchase in their behalf of 2,500 shares of the stock of the Arcade Building & Realty Company, which shares were then owned by A. W. Denny Company, and which shares defendants desired to purchase. It is further alleged that, for that purpose, defendants made and delivered to plaintiff a written memorandum, which is set forth by copy, stating the terms upon which the shares of the common stock of the Arcade Building & Realty Company were to be purchased and the price to be paid therefor. It is further alleged that, by the contract of employment, the defendants promised and agreed with the plaintiff that, if plaintiff should negotiate a purchase for them of the 2,500 shares of common stock of the Arcade Building & Realty Company by procuring the A. W. Denny Company to sell the stock on the terms set forth in the written memorandum, the defendants would pay plaintiff, as a commission for such services, the sum of $10,000.

The complaint further alleges, that the plaintiff duly negotiated the purchase of the stock and procured the A. W. Denny Company to sell the stock, and persuaded and induced it to sell and convey the stock upon the terms set forth in the written memorandum; that the A. W. Denny Company was then and there ready, able, and willing to sell and convey the stock to the defendants on the terms prescribed in the written memorandum; that plaintiff notified defendants thereof; that it duly carried out and performed the terms and conditions of the contract of employment on

its part, and that the defendants had never paid the agreed commission of $10,000, or any part thereof.

Respondent David Whitcomb lives in Seattle, and was served in the action on November 25, 1913. Defendant Ernest M. Whitcomb lived in Amherst, Massachusetts, and was not in the state of Washington at the time the suit was begun, or at any time thereafter until he came as a witness for the trial in September, 1914. Consequently no service of process was made upon him in time for trial. Respondent David Whitcomb, having unsuccessfully demurred to the complaint upon the overruling of the demurrer, filed an answer denying all the allegations of the complaint except the nonpayment of the $10,000 or any part thereof. Upon the issues between appellant and respondent David Whitcomb, the cause was brought on for trial, defendant Ernest M. Whitcomb not appearing in the case by answer or otherwise. The verdict was for the respondent.

There are certain admitted or undisputed facts in the case which for a proper understanding of the controversy will be summarized as briefly as possible. The Arcade Building & Realty Company, a Washington corporation, which for convenience will be called the Arcade Company, owned a leasehold interest, having about ninety-two years to run, on a parcel of land in Seattle. There was a building owned by the Arcade Company upon this land. The capital stock of the company is $1,000,000. Three-fourths of the stock of the company, that is to say, 7,500 shares of the par value of $750,000, was owned by the estate of G. Henry Whitcomb, of Worcester, Massachusetts, father of the two defendants, who was then under incapacity, and his estate was under the management and control of two conservators, one of whom was Ernest M. Whitcomb. The other 2,500 shares of the Arcade Company, of the par value of $250,000, was owned by the A. W. Denny Company, a Washington corporation, which for convenience we shall call the Denny Company. The value of this one-fourth interest, or 2,500 shares of Arcade

stock, was estimated by the Denny Company at from $325,000 to $400,000.

In the spring of 1912, Henry C. Ewing, a member and agent of the appellant company, either at the instance of the Denny Company or on his own volition, began negotiations with David Whitcomb in Seattle for the sale of the 2,500 shares of the Arcade Company stock for cash. Several conversations were had between Ewing and David Whitcomb which resulted in nothing, but Ewing was informed by David Whitcomb that, as the proposition was a large one, Ewing would have to take the matter up with his brother, Ernest M. Whitcomb, and the estate in the east. About June, 1912, Ewing visited the east and had several personal conferences and considerable correspondence regarding the matter with Ernest M. Whitcomb. Negotiations progressed to such an extent that a preliminary or tentative agreement, as Ewing called it, was drawn up in the office of a lawyer in New York, setting forth the terms upon which Ernest M. Whitcomb signified his willingness to purchase the Arcade Company stock from the Denny Company. This agreement was not signed by either party, and it contained nothing as to the commission to be paid by the Whitcombs, or either of them, if the agreement was finally consummated by Ewing. As to the remainder of the details of the transaction between the parties and their subsequent transactions, the testimony is in sharp conflict. The jury having found in favor of the respondent, every intendment as to the truth of the facts asserted by respondent must be presumed, unless the verdict of the jury was illegally influenced by some error or misconduct on the part of the trial court or the respondent.

I.   The court instructed the jury that:

"The fact that he [Ernest Whitcomb] has not appeared to answer this complaint, notwithstanding he has appeared as a witness in the case, is not to be considered by you as reflecting in any way upon his rights in this matter, as the law did not require him to file an answer in this case, and his

credibility is not to be affected simply by reason of the fact that he has not voluntarily appeared to file an answer to this complaint."

Thereafter, in arguing the case to the jury, one of counsel for appellant made the following statement:

"Of course, it is the law that Mr. Ernest Whitcomb did not have to appear in this suit until legal service was made upon him, but on the other hand, knowing of the suit he had a perfect right to appear whether he had been served or not, and it would seem that if he was certain of what took place between himself and Mr. Ewing at the Transportation Club in New York, he would be perfectly willing to appear and defend the suit and have it disposed of when he came out here to testify."

Whereupon counsel for respondent objected to that line of argument, and counsel for appellant, addressing the court, said:

"I said if Mr. Ernest Whitcomb felt sure of his position,— he had a perfect right to appear in this suit, and if he had been sure of his position, he no doubt would have availed himself of that right when he came across here as a witness."

Thereupon the court, addressing counsel and jury, said:

"The court has instructed the jury already that the fact that he has not appeared is not to be considered as reflecting upon his testimony at all, or not as prejudicing his rights in this case.    Proceed."

Counsel for appellant then asked: "Do you instruct the jury that I cannot argue along that line?" To which the court replied, addressing counsel and jury:

"The fact that he does not appear to defend this case I have instructed the jury is not to be considered to his prejudice.    Yes, I think he should not comment upon it."

This instruction and these rulings of the court upon the argument of counsel have been assigned as error by appellant.    It is insisted with great vehemence that, by the ruling and instruction here complained of, the court not only for-

bade the jury to consider the action of the witness Ernest Whitcomb in connection with the case as bearing upon his credibility, but also forbade appellant's counsel to argue to the jury that his voluntary acts with reference to the case in which he was named as a party should be considered by them at all as affecting the weight to be given to his testimony.  It is asserted that this instruction and these rulings took from the jury the right to decide upon the veracity and credibility of Ernest Whitcomb as a witness, notwithstanding the fact that he had traveled 6,000 miles to appear as a witness for the codefendant, his brother, though still exercising his lawful right not to appear in the case until legally served; and that, furthermore, the interruption of the argument and the ruling of the court amounted to an indorsement by the court of Ernest Whitcomb, selecting him and giving him a standing different from that of Ewing and other witnesses; that he was held up to the jury as entirely credible and free from attack, while Ewing was, by general instructions, declared an interested witness.

A large number of cases are cited by appellant to the effect (which has never been doubted in this state) that the courts should not comment upon the evidence in the case or point out a witness or a class of witnesses as being more or less entitled to credit than others, and that a jury should not be instructed that they must or must not find the credit and credibility of a witness or a class of witnesses in a certain way; none of which cases seems to us to be in point.  For instance, *Jones v. Casler*, 139 Ind. 382, 38 N. E. 812, 47 Am. St. 274, is cited to the effect that the weight to be given to the testimony of one witness or class of witnesses is always a question for the jury, and that it is never proper to charge a jury, as a matter of law, that any witness or class of witnesses shall be received with greater consideration than any other.  This proposition cannot be doubted and never has been gainsaid in this state with any degree of success.  *Bradley v. Gorham*, 77 Conn. 211, 58 Atl. 698, 66 L. R. A. 934,

has been cited to the effect that, where the trial court instructed the jury that, if there was no evidence impeaching a witness, his testimony was entitled to full credit and belief, the instruction was erroneous; that the jury were not, as a matter of law, bound to regard what he had said as entitled to full credit and belief; they were to consider all the evidence in the case. But no such instruction was given in this case. *People v. Wallace,* 89 Cal. 158, 26 Pac. 650, is cited to the effect that the trial court erred in instructing the jury that no inference unfavorable to the credibility of witnesses should be drawn from the fact that they were engaged in a lawful undertaking, that of theaters selling liquor, such business being then privileged in that state. It is an undeniable rule, as stated in *DeLong v. Giles,* 11 Ill. App. 33, cited by appellant, that it is the province of the jury to take into consideration all the facts appearing from the evidence that in their judgment throw light upon the question, which may include the pursuit the witness follows as a business; but that these, or any of them, while tending to discredit him, may not operate to that extent, and the right, with the responsibility of determining upon such consideration alone whether it does or does not, must rest wholly with the jury. *Gilmore v. Seattle & Renton R. Co.,* 29 Wash. 150, 69 Pac. 743, and *State v. Jackson,* 83 Wash. 514, 145 Pac. 470, are cited as sustaining appellant's contention. In the *Gilmore* case, it was said:

"The court cannot, without invading the province of the jury, instruct them which class of evidence is entitled to the greater weight, or instruct them in any manner which will not leave them free to make up their verdict from their own views on the weight of the evidence. Nor is such an instruction rendered harmless by an instruction to the effect that the jury are the sole judges of the credibility of the witnesses and of the weight of the evidence, as it gives them a wrong rule of law for determining that weight and credibility."

But that language is not referable to any such situation as is here presented. In *State v. Jackson, supra,* there were

remarks and comments by the trial court upon certain books
of account and other documentary evidence, positively indi-
cating the views of the court as to the weight of the testi-
mony of one of the parties. A large number of other de-
cisions of this court are cited to the effect that the credibil-
ity of witnesses is exclusively a matter for the jury, along
whatever line the jury sees fit to reason out the matter; to-
gether with a long list of authorities from other states.

We cannot agree with the contention of appellant that the
instructions and rulings here complained of were erroneous
and prejudicial, in that they single out the witness Ernest
Whitcomb and give special directions regarding his credi-
bility in such a way as to give him a special standing before
the jury. He appeared upon the complaint as a party to
the case, but it was admitted that he had not been legally
served and had made no appearance in the case. It was
necessary for the court to instruct the jury that they could
render no verdict against Ernest Whitcomb. We think it
a correct proposition that the fact that Ernest Whitcomb
had not appeared to answer the complaint before it was
necessary for him to do so, although he had appeared as a
witness in the case, was not to be considered as reflecting
upon his rights in the controversy or upon his credibility as
a witness. He had a legal right to decline to enter his ap-
pearance in the case before he was legally served, and to
decline to be bound by any judgment that might be rendered
against his codefendant, David Whitcomb. He was under
no duty to employ expensive counsel to defend him in a case
until he had been properly made a party to the case. Mere
nonappearance in the case, therefore, was not a circumstance
to be considered as affecting his credibility as a witness.
There were other circumstances to be considered, upon which
counsel for appellant laid no stress and to which they ap-
parently paid no attention. These facts were that he was
a brother of David Whitcomb; a nominal party defendant;
a party charged by the plaintiff with being interested in the

result of the litigation, and one who had traveled a very great distance to appear as a witness to testify in the case in behalf of his brother and codefendant. All these were matters proper to be considered by the jury in considering the interest, bias, and credibility of Ernest Whitcomb as a witness. As to these matters, the court properly instructed the jury as follows:

"The question of the credibility of the witnesses is a matter for the jury to pass upon, where they do not agree in their testimony, and in considering the testimony of witnesses you would have regard to their bearing and demeanor on the witness stand as indicating frankness and fairness on their part; you would take into consideration the interest of the witnesses in the result of the litigation, as tending to color or bias the testimony. The testimony of a witness is not to be disregarded because he may be interested in the result of the litigation, but human nature is so constituted that the judgment of most of us is apt to be colored by our self-interest, and that is a characteristic of human nature for the jury to consider in passing upon the credibility of witnesses."

This direction properly applied impartially to the parties on both sides. The court in its instructions further repeatedly instructed the jury that they were the sole and exclusive judges of the facts. The argument of counsel, that the mere nonappearance of Ernest Whitcomb as a party defendant in the case was a circumstance to be considered by the jury in judging of his credibility as a witness, was improper argument and was properly restrained by the court, for the reason that such argument invited the jury to draw an improper inference from the nonappearance of a witness as a defendant in the case, as to which he had an absolute legal right. Such improper inferences should always be restrained when necessary. *Klepsch v. Donald,* 8 Wash. 162, 35 Pac. 621; *Knowles v. People,* 15 Mich. 408; *Ludlow v. Pearl's Estate,* 55 Mich. 312, 21 N. W. 315.

II.    Appellant's second contention is that it was erroneous for the court to instruct the jury that there was no

evidence of partnership in this case between the two Whit-
comb defendants, and that the jury cannot find David Whit-
comb liable on the contract made by Ernest Whitcomb, unless
David expressly authorized the contract or thereafter rati-
fied it. It is urged that the existence of a partnership, like
any other fact, may be proved, not only by direct testimony,
but by facts and circumstances; the word "partnership" is
not required, nor written articles therefor. This is no doubt
true. The question here, however, is simply one of fact. As
to the agreement between Ernest Whitcomb and appellant
for the payment of a commission, if any agreement was made,
it was oral, and the written memorandum indicative of the
tentative terms of the purchase and sale of the Arcade Com-
pany's stock from the Denny Company was only incidental
thereto.

It is insisted by appellant that, because David Whitcomb
had referred Ewing to Ernest Whitcomb, and Ewing had
negotiated a preliminary agreement with Ernest Whitcomb
in which, as he alleged and testified, Ernest Whitcomb had
agreed that, if the purchase of the stock was consummated
upon the terms stated he would pay a commission of $10,000,
therefore David Whitcomb is bound by the agreement made
by Ernest Whitcomb. The only witness as to this fact on
the part of appellant is Mr. Ewing. His version of the
transactions between himself and Ernest Whitcomb is dis-
puted in some very important particulars by Ernest Whit-
comb, who is supported in some slight degree by the testi-
mony of the lawyer in New York City to whom they went
to draw the tentative agreement. There was positively no
direct testimony on the part of either of the parties that a
partnership existed between the two Whitcombs. There is
an allegation and theory on the part of appellant that the
two Whitcombs were associated together in a joint business
enterprise in the transactions herein involved and were and
are partners for the purpose of these transactions. The two
vital questions of fact in the case for the decision of the jury,

·therefore, were, (1) Did the defendant Ernest Whitcomb, in the negotiation with Ewing at New York on June 28, 1912, promise Ewing a commission of $10,000 if he would procure the acceptance by the Denny Company of the Whitcomb proposition embodied in the written memorandum? and (2) If such promise was made, was defendant David Whitcomb bound by it as a joint proposition from himself and Ernest, as partners or otherwise?

The rules of law as to general partnerships are well understood to be much broader and more comprehensive to the effect that any act or representation done or made by one partner with reference to any of the partnership business will bind the other partners, than the rule applicable to a special or limited partnership or a mere joint venture. If the theory of appellant in this case be true, that both of the Whitcombs were interested in the purchase of the Arcade Company stock, it nevertheless does not necessarily follow that they were equally interested, or that they were jointly interested, or that they agreed or intended to take over the Arcade Company's stock as partners. Assuming that it was their intention to purchase the Arcade Company's stock as indicated by the transactions had between them and Ewing, it may also well be assumed that each of them would take his individual share according to his interest or ability. The court merely instructed the jury (which was the truth) that there was no evidence of a partnership between the two Whitcombs; that the agreement made by one would not be binding upon the other without his consent, and that the liability of David Whitcomb, who was the sole defendant on trial in this cause, can only be established by such evidence as would be sufficient to establish it between parties not partners, viz., by evidence showing prior authorization or subsequent ratification. There is no contention on the part of appellant that David Whitcomb, prior to the departure of Mr. Ewing for the east to consult with Ernest Whitcomb, made any agreement or authorized any agreement, or that

he ever afterwards ratified any agreement, that he or they would pay or be liable for the payment of any commission whatever for the purchase of the Arcade Company stock. The only evidence there is of any such agreement is the evidence of Mr. Ewing of his agreement with Ernest Whitcomb; and Ernest Whitcomb does not deny, but admits, that he agreed that, if the purchase was made as contemplated, he would pay a commission of $10,000, or see that it was paid. Ernest Whitcomb also further testified that this agreement, so far as David Whitcomb was concerned, was subject to his approval, and upon these controverted facts the case went to the jury. It is not a case where, as in *Nicholson v. Kilbury*, 83 Wash. 196, 145 Pac. 189, or *Galbraith v. Devlin*, 85 Wash. 482, 148 Pac. 589, and many other cases from this and other courts, the parties charged with a partnership had in fact acted in a joint or common interest, and so established the fact that they were partners *inter se* although not calling themselves partners. The facts as to this issue were properly submitted to the jury under proper instructions, which instructions were as fair to the appellant as could be desired.

III. The third proposition of appellant is that the court erred in instructing the jury that a broker engages to obtain for his employer the contract which he was authorized to submit, whereas the law is that it is no part of his duty or right to obtain such contract.

This instruction is complained of for two reasons: First, because it speaks of the refusal of the employer of the broker to carry out the contract, with the implication that a positive refusal is necessary in order to entitle the broker to his commission, whereas the nonaction of the employer of the broker is just as effective; and, secondly, because it tells the jury that the broker engages to obtain for his employer the contract which he was authorized to submit. It must be remembered, however, that the basis of appellant's recovery is an agreement to do a certain thing for a certain sum. In

other words, the right and amount of its recovery are measured by its contract. If it agreed to do a certain thing, it was necessary that it do that thing before it could recover for its services. Upon this subject the court instructed the jury quite fully and comprehensively. It, by its instructions, directed the jury's attention to the fact that the appellant claimed that, in consideration of its services in bringing about a sale from the Denny Company of the 2,500 shares of stock in accordance with the written proposition, it was entitled to the sum of $10,000; that it would become entitled to this compensation whenever it should succeed in obtaining from the Denny Company its consent to sell this stock in accordance with the terms of the written proposition, and provided that the Denny Company was, at the time of such consent or within a reasonable time thereafter, ready, willing, and not only ready and willing but able, to close the contract in accordance with the terms of the written proposition. The attention of the jury was further directed to the claim of the appellant that it had performed its part of the agreement, that the Denny Company had signified its consent to the terms of the written proposition, that it was ready, able, and willing to carry out the terms of that proposition of purchase, and that, therefore, the appellant was entitled to the compensation agreed upon. The court then instructed the jury that:

"The compensation of a broker, as a general rule, is not dependent upon the actual consummation of the contract between the parties for whom he acts as middleman. If the employer of a broker should refuse to carry out the contract which he employed the broker to obtain for him, the broker is nevertheless entitled to his commission, because that is all he engages to do. He engages to obtain for his employer the contract which he was authorized to submit; and where the employer claims that the broker was not only to find somebody willing to enter into the contract submitted to the broker, but was not to receive any compensation unless his employer should actually conclude the transaction and enter

into the contract with the other party, there must be evi-
dence that such was the condition before the broker would be
deprived of his right to compensation. If from a preponder-
ance of the evidence in this case you should be satisfied that
the defendant David Whitcomb, either by himself or through
his brother, or by the adoption of a contract made by his
brother with the plaintiff, employed the plaintiff to negotiate
the purchase from the A. W. Denny Company of the 2,500
shares of stock referred to in this written proposition, and
if the plaintiff was so employed to bring about, in behalf of
the defendant, the sale of this stock upon the terms and con-
ditions set forth in this written proposition, as claimed by
the plaintiff, and if you should further find from the evidence
that the plaintiff did induce the A. W. Denny Company, the
owner of these 2,500 shares of stock, to consent to this writ-
ten proposition, and to agree to sell these shares of stock to
the defendants upon the terms set forth in this written propo-
sition, and if you further find from the evidence that the
A. W. Denny Company was ready, willing and able to carry
out such a contract on its part, and if you further find that
the defendant David Whitcomb, through himself or his
brother acting under his authority, agreed to pay the plain-
tiff the sum of $10,000 in event he should obtain from the
Denny Company their consent to enter into such a contract
as is set out in this written proposition, and if you find, as I
say, that the Denny Company was ready, able and willing to
carry out such a contract, then your verdict would be for
the plaintiff against the defendant David Whitcomb in the
sum of $10,000."

These instructions, therefore, taken as a whole, we think,
comprehensively set forth the law applying to the agreement
under consideration very fully and very fairly to the appel-
lant. We can see no error in this assignment.

IV.   The court instructed the jury as follows:

"If you should find from the evidence that the defendant
Ernest Whitcomb was a conservator of the estate of his
father, and that the estate of his father owned a portion of
the common stock of the Arcade Building & Realty Com-
pany, which under this written proposition would have to be
converted into preferred stock of the Arcade Building &
Realty Company, and if you should find that Ernest Whit-

comb, in making such a contract with the plaintiff, if he did make it, was taking advantage of his trust position as conservator of the estate of his father for his personal benefit, then such a contract would be against public policy and would not be recognized by the law, and the law would not enforce it at the instance of Ernest Whitcomb, or would not enforce it against him."

An exception was taken to this instruction. It is insisted by appellant that the law is well settled that a broker is entitled to his commission for procuring a purchaser even though there be some illegality in the transaction to be consummated between the buyer and seller, where the broker does not actively participate in the illegality, citing a number of cases. It is further asserted that the law always presumes honesty of action and intent unless the contrary affirmatively appears. These statements of the law were given in substance by the court in the remainder of the instruction complained of under this head. That remainder is as follows:

"If there appears in the case any claim that there was anything in connection with the carrying out of the written memorandum which would have involved any fraudulent or unlawful act, there are two principles of law to be remembered in this connection. One is that the law always presumes that a contract is to be carried out lawfully if a lawful performance is possible, and therefore will not adjudge a contract unlawful unless its performance necessarily involves an illegal or fraudulent act, or the evidence shows that an illegal or fraudulent act was intended, the presumption being in favor of the lawfulness and *bona fides* of contracts and transactions. The other principle is that a broker employed as a middleman between two parties and who renders the agreed service is entitled to his commission even though the parties to the main transaction, or either of them, contemplate a violation of the law or the commission of a fraud, unless the broker or middleman knowingly participated in some way in the illegality or fraud."

It seems to us, therefore, that the court instructed the jury fully in line with appellant's theory, and that the appellant has no right to complain of the instructions. It must further

be observed that the testimony of the parties conflicted as to details of the agreement arrived at in New York. The version of Ernest Whitcomb was that it was dependent upon that very fact of the conservators of the estate of G. Henry Whitcomb receiving the consent of the probate court of Massachusetts to enter into the transaction of converting the stock held by them as conservators for G. Henry Whitcomb into the kind of stock contemplated by the written memorandum. The court, therefore, was simply giving to the jury the versions of the respective parties to the contract, and instructing them upon this question much more strongly in favor of appellant than of respondent. We see no reason for complaint of the instructions as a whole.

V.    Appellant's fifth proposition of error is based upon an instruction of the court to the effect that, in passing upon the facts in this case, where the jury are unable to decide as to the superior credibility of the witnesses as to the weight of the positive proof, they must determine from a consideration of the whole case the circumstances and inferences that may fairly be drawn from the evidence as to the probability of the truth of the claim of plaintiff and as to the truth of the claim of the defendant. They were then told that, if, in carrying out the alleged contract between defendant and the Denny Company as proposed, there were difficulties to be overcome and that before the contract could be executed by the parties it would be necessary to obtain the consent of the probate court of Massachusetts to the conversion of the stock of G. Henry Whitcomb into preferred stock, these were matters which the jury might consider in passing upon the probability of such a contract having been made by the defendants—the probability of their having agreed to pay plaintiff $10,000 after having obtained the consent of the Denny Company to enter into such contract and before the contract was actually closed between the parties by the overcoming of whatever difficulties may have been in the way; and in passing upon the probability of the truth of the claim of the plaintiff that it was

to receive $10,000 for the services in inducing the Denny Company to enter into any such proposed contract, the jury should consider whether it was probable that appellant would render the services which the jury might find appellant to have rendered if it was only to be compensated in the event the parties to the proposed contract should actually consummate it.

Appellant contends that this instruction singles out the circumstances claimed by respondent to tend strongly to prove his contention on the facts, and amounted to an argument on the part of the court in favor of respondent. It does not so seem to us. It would seem to us that this instruction also was much more favorable to appellant than to respondent. It drew the attention of the jury to the probability of the difficulties in the way of procuring the consent of the Denny Company to the particular terms demanded by respondent, if made, and of procuring the consent of the probate court of Massachusetts to the conversion of the stock of G. Henry Whitcomb into preferred stock, as bearing upon the probability of defendant agreeing to pay plaintiff a commission of $10,000. It is true it takes cognizance of the theories of both parties to the case, as is always proper where the theories of both parties find any justification in the law. The jury were further told in this instruction that they were to consider the probability of the truth of the claim of plaintiff that it should receive $10,000 for its services in inducing the Denny Company to enter into the proposed contract, whether or not it would have rendered such services as the jury might find it had rendered through Ewing, and going to the expense that it had gone, if it was only to be compensated in event the parties to the proposed contract should actually consummate it and carry it out. In most cases where the evidence is in sharp conflict and is close, it is advisable for the trial court to direct the jury's attention to the probabilities of the case and to the circumstances and inferences surrounding the parties in the case, in order that

they may properly weigh the evidence of the parties and in a way put themselves in the position of one or the other of the parties and determine the truth of the matter. It has always been held proper for the court to instruct the jury to consider the probabilities of the truth of the evidence. While this instruction calls attention to the particular features of the case and to the particular phases to be determined as to the probability or improbability of their truth, we cannot say that it is an unfair comment upon the evidence such as is prohibited by our constitution, or an argument in favor of either the one or the other of the parties, unless it be in favor of the appellant.

VI. It is alleged that the court erred in giving the following instruction:

"Unless the minds of both parties actually meet in a present agreement there is no contract. And I instruct you, therefore, that, unless you find from the evidence that the negotiations between the parties in this case did result in an actual present agreement as distinguished from a proposed proposition to be considered in the future, you must find a verdict for the defendant."

It is insisted that this instruction was erroneous and misleading, in that it confused the meeting of minds upon the broker's contract of employment with the meeting of minds upon the purchase and sale of the stock; that, under the evidence, the jury could not fail to be misled by this instruction. It is true that the agreement for the broker's employment was in a way separate from the proposed contract for the purchase and sale of the stock, but it was dependent upon it. The purchase and sale of the stock upon certain terms was a part of the broker's contract of employment. There was no dispute, and could be no dispute, as to what the terms of the proposed purchase and sale of the stock were. They were set forth in the written memordanum. But even that was not an executed agreement. It was unexecuted, both in its form and in its performance. It was a proposed agreement.

It was spoken of by Mr. Ewing in one of his letters as a tentative agreement. He was employed, as he alleges, to bring about the consummation of that agreement, and he says that it was agreed that, if he did bring it about, he was to receive $10,000. Again, however, the instruction excepted to is not the whole of the instruction upon that subject. That part of the instruction excepted to was preceded by the following instruction given by the court:

"The contract which plaintiff claims was made by the defendants, to pay the plaintiff a commission, was made, if at all, orally in conversation between the parties and was not reduced to writing. The court instructs you in order for there to be a contract the minds of the parties must meet; that is to say, they must reach an actual present agreement to which they both in fact agreed to be then bound. It is not sufficient that they come to an understanding as to the terms of a contract which either one or both parties may be willing to enter into in the future after further consideration, nor is it even sufficient that one of them intends or understands that the arrangement is intended to be binding at that time."

It, therefore, seems clear that the instruction complained of, taken in its entire setting, is an instruction referring to the identical oral contract of employment alleged between appellant and respondent. It certainly is the law that a party to a contract cannot recover until his contract is performed, or, in other words, until his right of action has accrued. It certainly was correct for the court to instruct the jury that "unless you find from the evidence that the negotiations between the parties in this case did result in an actual present agreement," the understanding of one party alone would not make a contract. Here, again, there is a controversy between the chief witnesses to the transaction, Mr. Ewing and Mr. Ernest Whitcomb, as to whether a present binding contract was then made. There is testimony on the part of Ernest Whitcomb and the lawyer in New York who drew the written memorandum, who were the only ones present beside Mr. Ewing, to the effect that Mr. Ewing insisted

upon some kind of writing being given to him as a basis of a future negotiation which Mr. Ewing desired to conduct with investors or financial people in order to finance the sale of the proposed preferred stock for the Denny Company. In other words, Mr. Ewing testified that certain things were said to constitute the agreement, while Mr. Whitcomb and the lawyer testified that the conversation was different. It was within the province of the jury to believe either version, or to believe part of one and part of the other, and it was possible for them to arrive at the conclusion that the conversation that actually occurred did not make clear that the minds of the parties had then met in a present agreement. It was purely a question of fact to be submitted to the jury, and we think the instruction as a whole properly submitted it. We find no prejudicial error.

We think the case was properly presented to the jury upon the issues between appellant and David Whitcomb. It may be reasonably inferred that the issues of fact were resolved by the jury in favor of respondent David Whitcomb upon the theory that he was not a partner of Ernest Whitcomb in the transaction involved, and did not authorize or ratify the agreement for the payment of the sum claimed for the brokerage services. We do not understand that the issues of fact as decided in this case are conclusive in any subsequent trial between the defendant Ernest Whitcomb and appellant. We express no opinion, however, as to the probability of the liability of Ernest Whitcomb for the payment of the commission under facts here shown.

The judgment is affirmed.

PARKER, MAIN, and FULLERTON, JJ., concur.

MORRIS, C. J. (dissenting)—I dissent. The court, by its ruling and instructions, made the credibility of the witness Ernest M. Whitcomb a question of law rather than one of fact for the jury. In considering such credibility and the weight to be given to the testimony of this witness, the jury

had the right to consider any fact which in their judgment affected such credibility or weight. Being a question for the jury, counsel was within his rights in commenting as he did when stopped by the court.